WILLIAM B. PATTON V. ABRAHAM SKIDMORE.

First class claimants had six months from the opening of the Land Offices on the first Thursday in February, 1838, to locate their certificates so as to include their improvements, in preference to all others ; but the failure of a first class claimant to obtain and locate his certificate so as to include his improvements within the time, left the land vacant and liable to appropriation by the first applicant who presented a certificate which entitled him to appropriate lands out of the vacant public domain.

It could make no difference by what means the occupant was prevented from making his location. The law made no provision for casualties of any kind. It simply made the reservation for his benefit for the prescribed period ; and when the period elapsed the reservation and privileges were determined.

Nor has the question of notice, which was raised upon the trial, any application to the case. No one could locate so as to deprive another of his improvements during the period of the reservation, whether he had or had not notice; and after the limitation expired, the land being vacant, was equally open to all.

If by fraud, force or other wrongful means, the plaintiff had prevented the defendant from asserting his preference and securing his improvements, and had thus obtained the title to himself, he might be deemed to hold in trust for the defendant. But nothing of the kind is pretended.

If the doctrine of notice were applicable to such a case at all, it may well be questioned whether there was any evidence to affect the plaintiff with notice in this case.

There is no evidence from which it can be inferred that the plaintiff knew or could have known of the defendant's intention to return to the country and claim the land.

Appeal from Lamar. Tried below before the Hon. William S. Todd.

Action of trespass to try title by appellant against appellee, commenced August 30th, 1845. In January, 1836, the defendant immigrated to Texas, and on the second of March of the same year, the date of the Declaration of Independence, he had improved and was residing on the land in controversy, and continued to reside there until the summer of the same year, when he returned to Alabama for his family, leaving his improvement in the possession of a person who undertook to take care of the same until his return, which was expected to be in the Fall of the same year.

In December, 1838, plaintiff located the land, and on the 7th of July, 1845, obtained a patent.

In the meantime, in May, 1839, defendant returned from Alabama with his family, and took possession of the premises, and on the 30th of the same month obtained a headright certificate from the Board of Land Commissioners of Red River county, for a league and labor. On the 28th of February, 1842, the defendant filed his petition in the District Court of Red River county, stating the fact of his immigration, that he had obtained a certificate of headright, that it had not been recommended by the Travelling Board of Land Commissioners, &c., and praying that his right might be established. At the Spring Term, 1842, there were a verdict and judgment in his favor. On the 8th day of July, 1844, the judgment was reversed by the Supreme Court, and the cause remanded.

At the Fall Term, 1845, of the District Court, there were verdict and judgment again in his favor. On the 8th day of

March, 1848, this judgment was reversed and the cause re-manded. At the Spring Term, 1849, of the District Court, there were verdict and judgment again in his favor. On the 6th day of April, 1849, this judgment was affirmed; and on the 24th of April, 1852, Skidmore filed with the Surveyor of the county, then Lamar, the certificate which he obtained by the judicial proceedings aforesaid, and asked a survey thereof upon his improvement. In the meantime this cause had been continued from Term to Term, and was tried at the Fall Term, 1852. It was proved that the plaintiff knew the fact of Skidmore's previous claim to the improvement, when he made his location. There was no evidence that defendant had ever attempted to locate his original certificate on the land, nor any plea of limitation.

The charge of the Court was as follows:

On the trial of this cause the Court charged the jury that the Constitution of the Republic of Texas guaranteed to the actual settler and occupant of the soil in all cases, the right, in locating his land, to include his improvement in preference to all other claims not acquired previous to his settlement, according to the law of the land and that Constitution. Also, that the Constitution made provision that the legislative authority of the Republic should pass such laws as might be deemed necessary in order to perfect titles to land thus granted, and prescribe the mode and manner in which such titles should be obtained. Further, that the Land Law passed on the 14th December, 1837, was passed in accordance with the provisions of the Constitution, and was the law which must govern the main question involved in this case. The Court charged the jury that by this law the several Land Offices were opened on the first Thursday in February, 1838, and were kept open for six months thereafter, for the express and sole purpose of granting and completing land titles to all those who by the existing and previous law had acquired a preference in the first locations, of which class the defendant claimed to be one,

and bases his right to the land in controversy upon the clause of the Constitution already referred to, and the provisions of this Act.

The Court charged the jury that it was the intention of the Legislature that all claims of this class should be granted and completed within the six months next after the opening of the several Land Offices under this Act, and that all such claims which were not so granted, and completed, and located within six months, lost their priority, and stood upon a footing with other legal claims to land. The Court charged that cases might arise in which the actual settler and occupant of the soil, who was residing in Texas on the day of the Declaration of Independance, might have been prevented by the act of God, or some circumstances beyond human control, from obtaining from the proper tribunals, such evidence of a claim to land as would authorize a Surveyor to locate and survey the same, and that in such a case, his preference right to locate his land in such a manner as to include his improvements, would continue until he obtained such evidence, provided he neither abandoned his location nor was guilty of any laches, but diligently used all the lawful means afforded him, to effect a speedy completion of his title. In such a case, the Court charged the jury that a survey of the premises made by a party with notice, would be tortious, and could not be valid, although supported by a patent from the Government. The jury were instructed that, therefore, if they found from the testimony that the allegations in the defendant's answer were true, and the survey of plaintiff was made with a knowledge of the same on his part, that they would be justified in declaring by their verdict that the survey was illegal and void, being in fraud of the rights of Skidmore, and that the patent being obtained by fraud from the Government should be cancelled and the title to the land vested in Skidmore.

Verdict and judgment for defendant. Motion for a new trial overruled, &c.

*Morrill & Dickson*, and *Mills & Murray*, for appellant.

*S. H. Morgan, H. Dillahunty* and *T. J. Jennings,* for appellee.

WHEELER, J.   The plaintiff's patent was obtained in 1845. The defendant was not in a condition to locate his certificate with effect until 1850.   But he insists that, by reason of his prior occupancy and improvement, he had the right then to appropriate the land by his certificate ; and that the plaintiff's title was acquired in fraud and violation of his right. The real question to be determined is, whether the land was vacant and subject to entry when the plaintiff made his location ; which the defendant avers was on the 29th of December, 1838.   We think it will be impossible to maintain that it was not.

The provisions of law on which the decision of the case depends are few and plain.   The Constitution of the Republic conferred the right, and the General Land Law of 1837, prescribed the mode in which the citizens of the country might acquire titles to land from the Government.   The 10th Section of the General Provisions of the Constitution gave the right to land to all citizens of the Republic who had not received their land as colonists ; and provided that " in all cases the actual settler and occupant of the soil shall be entitled, in locating his land, to include his improvement, in preference to all other claims not acquired previous to his settlement."   The law of the 14th of December, 1837, provides for issuing certificates to those entitled to land ; and that the Land Offices should go into operation on the first Thursday in February, 1838, and confine their operations, for the first six months, to the granting and completing of titles to those alone who were of the first class ; that is, all who were residing in Texas on the day of the Declaration of Independence, and volunteer soldiers who had served a tour of duty previous to that time..  After which, other legal claimants should have their

titles completed.  (Sec. 39, Genl. Land Law of Dec. 14th,
1847 ; Hart. Dig. Art. 1875.)  The 17th Section of the law
provided that where more than one application is made for
the same tract of land to be surveyed, the settler or occupant
shall have the preference if their claims be otherwise equal ;
and that no location or improvement made since the Declara-
tion of Independence, by persons who have since that time ar-
rived in the country, shall be regarded when they come in con-
flict with the claims of those who were here at the Declaration
of Independence ; but those entitled to the six months' prefer-
ence shall have the right of locating their claims upon any
vacant lands of the Republic, without regard to improvements
made by those who had arrived in the country since the Decla-
ration of Independence.   In all other cases, or in case there
be more occupants than one, the conflicting claims shall be
tried summarily before a Justice of the Peace, and upon the
decision the Surveyor shall give to the successful party the
field notes.   (Hart. Dig. Art. 1853.)

From these citations from the law, two things are strikingly
manifest, as applicable to this case :  first, that first class
claimants should have six months from the opening of the
Land Offices on the first Thursday in February, 1838, to locate
their certificates so as to include their improvements, in prefer-
ence to all others ;  second, that it was the policy of the law to
have all controversies respecting the right of location speedily
and summarily settled ;  for no appeal is given from the deci-
sion of the Justice, and it has been decided that no appeal lay.
After securing to the actual settler and occupant the right
guaranteed to him by the Constitution, of including his im-
provements, and allowing him six months for that purpose, the
great object was to provide against parties being delayed in
obtaining their titles.   That object is manifest in other
provisions of the law.  The intention was to afford the settler
ample time to secure his improvements ; but at the same time
not needlessly to delay others, whose claims might be equally

Patton v. Skidmore.

meritorious, in obtaining their rights. The six months preference given was a virtual reservation of the land from general location, for the benefit of those residing on vacant land, who might wish to secure titles to their homes. But when the six months expired, the reservation ceased, and was determined by its own limitation ; and if they had not availed themselves of their preference right, it was lost. The land reverted to its former state, and was subject to be appropriated by any holder of a first class certificate, as any other vacant land of the country. It was the duty and right of the Government to prescribe the mode in which parties who were entitled should obtain their land ; and the mode prescribed became the terms, upon compliance with which titles could be obtained. Compliance with the terms prescribed was a condition precedent to the acquisition of the title. In a liberal and just spirit the Constitution had provided that the occupant, who was entitled to land, should have the right, in making his s election, to include his improvement ; and in the same spirit, and to effectuate the same object, the Land Law of 1837 provided that six months should be allowed him to make his selection, before another should have the right to locate over his improvement. But there was an implied condition that he should make his election, whether he would include his improvements in his location, within that period. It was at his option to exercise his privilege or not ; but if he did not, whether his failure was from negligence or misfortune, his preference was lost. The rights of others, who had been postponed, accrued, and they were then upon an equal footing with himself. Nothing short of actual compliance with the terms and conditions of the law could confer on the occupant a right, or raise an equity, as against the Government or third persons. The reservation of the land for his benefit having expired, and been determined by its own limitation, left it vacant and liable to appropriation by the first applicant who presented a certificate which entitled him to appropriate lands out of the vacant public domain. It could

make no difference by what means the occupant was prevented from making his location. The law made no provision for casualties of any kind. It simply made the reservation for his benefit for the prescribed period ; and when the period elapsed, the reservation and privilege were determined. This conclusion results inevitably from the terms and conditions of the law ; and it is confirmed by its policy, which was to secure to all their titles with the least possible delay. Any provision which should have reserved from location all the land in the vicinity of settlements, and prescribed no limit to the reservation, or the time within which the occupant should make his election whether he would locate his land so as to include his improvement or not, would have been extremely unjust to others whose claims upon the bounty of the Government were equally meritorious, and must have resulted in infinite confusion and uncertainty of titles. Even at this day it would have been difficult to say that any man was secure in his title in any then inhabited portion of the country, if such had been the provisions of the law. Such a proposition would not have been tolerated ; and such a construction of the law would be wholly unwarranted by any thing contained in any of its provisions. How then stands the case of the defendant? The Land Offices were opened for his benefit on the first Thursday in February, 1838. They were continued open for his exclusive benefit for six months ; and he had that period within which to make his selection and location so as to include his improvements. The time expired early in August of that year. But he was not in the country, and had not been since the Spring of 1836. He had left in the Spring of that year and did not return until the Spring of 1839, long after the period prescribed for him to exercise his privilege had elapsed. In the meantime, in December, 1838, four months after the expiration of the period provided for the defendant to exercise his preferred privilege, the plaintiff made his location and survey. And it is impossible to deny his

right.    The land was vacant and subject to location by any holder of a certificate ; and the plaintiff was equally entitled with any other person to make the location.    The defendant did not obtain his certificate until after his return to the country in May, 1839, and after the land had been severed from the public domain and legally appropriated by the plaintiff.    The law had made no provision for the case of absentees. Absenteeism was not favored at that particular period in the history of the country.    Indeed it was not without difficulty, as the record evidently shows, and only by the most liberal construction in furtherance of the ·liberal policy of the Government in granting lands, and a more liberal construction than could have been applied in a case between individual claimants, that the right of the defendant to a certificate, or to receive any lands as a first class claimant, could be supported.    If his right could be held to relate back to any period anterior to his location or attempted location, which it evidently cannot, it certainly could not relate to a period anterior to the issuance of his certificate, which was long after the preference right had expired, and the land had been appropriated.    There evidently could he no relation back in this case ; because the location was the inception of the right to any particular land.    The Constitution gave a right to demand and receive land from the Government ; but it did not give a title.    It gave the right only to acquire a title in the manner which the Legislature should provide. The certificate became the evidence of that right ; and its location was the first step in the acquisition of a title to particular land.    It was not settlement, it was citizenship which gave the right to land ; settlement gave the right to include improvements in making the location of the certificate during the prescribed period : but if the location was not then made the preference was lost, and there was nothing upon which any after acquired title could relate back.    Nor has the question of notice, which was raised upon the trial, any application to the case.    No one

could locate so as to deprive another of his improvements during the period of the reservation, whether he had or had not notice ; and after the limitation expired, the land being vacant, was equally open to all. If by fraud, force, or other wrongful means, the plaintiff had prevented the defendant from asserting his preference, and securing his improvements, and had thus obtained the title to himself, he might be deemed to hold in trust for the defendant. But nothing of the kind is · pretended. The defendant's loss is solely attributable to his own neglect or misfortune. If the doctrine of notice were applicable to such a case at all, it may well be questioned whether there was any evidence to affect the plaintiff with notice in this case. Notice of the fact of an improvement having been made by the defendant, could not affect the right of any one to locate, after the expiration of the time allowed the party to secure it by his location. If the plaintiff knew whose the improvement was, he also knew the· defendant had suffered the time to elapse within which to assert his preference right. There is no evidence from which it can be inferred that the plaintiff knew or could have known of the defendant's intention to return to the country and claim the land. It does not appear that he was heard from during his three years absence ; and the plaintiff might very well conclude he had abandoned his former purpose altogether. In fine, there is no principle on which his right to the land in question can be maintained. It was vacant and subject to location by the plaintiff, when he made his location and survey ; and he did not thereby interfere with any right of the defendant. The judgment of the Court is therefore erroneous and must be reversed and the cause is remanded.

Reversed and remanded.