MARY M. CAMORON ET AL. v. J. M. THURMOND ET AL.

(Case No. 4308.)

1. JUDGMENT — RULES OF COURT.— A judgment was entered on the 16th of December, 1879, on a motion to enter the same *nunc pro tunc* as of the 6th of December, 1879, that being the last day of the preceding term. The cause had been submitted to the judge for trial on the law and facts in November, during the term which closed December 6, 1879. No consent to a continuance after submission was agreed to by counsel and placed of record, as required by rule 65 for the district courts. The judgment sought to be entered had never been read in open court; it bore no file-mark of the clerk showing it had been filed during the former term, nor was there any entry of that term in the judge's docket showing its character. The judge, in signing an exception to his action, on granting the motion to enter *nunc pro tunc*, stated that the motion was granted because the judgment was "the exact judgment rendered by the court on the 6th December, 1879." *Held*,

(1) The entry of the judgment was in violation of rule 65 for the district courts.

(2) To authorize the entry of a judgment *nunc pro tunc*, the proof that it was rendered should be. absolute and definite,— absolute from the record that a judgment was rendered, and its terms and conditions should be distinctly established by competent testimony.

2. FACT CASE.— See opinion for facts pleaded, held sufficient to author-
   ize the introduction of parol testimony to prove the consideration
   for a deed, with a view of showing that the land was separate prop-
   erty.
3. TENANT IN COMMON.— The deed of a tenant in common to a specific
   portion of the common property is not void, but will be respected
   so far as it may be consistent with the rights of co-tenants.
4. COMPROMISE.— The compromise of a doubtful right is a sufficient
   foundation of an agreement, and such compromise will not be set
   aside though it should afterwards appear that the party taking
   something under the contract was really entitled to nothing, pro-
   vided the compromise was in good faith, and without concealment,
   fraud or misrepresentation.

ERROR from Dallas. Tried below before the Hon. Geo.
N. Aldredge.

Mary M. Camoron and Alice Dill, with whom were
joined A. A. Camoron and William Dill, their husbands,
for themselves, and Mary M. Camoron as next friend for
her minor brothers and sisters, Robert A., James H.,
John T., Laura L., and Martha E. Horton, brought
suit against James M. Thurmond, H. L. Ray, James
Bentley, J. C. Bigger, trustee, J. W. Payne, C. M. Dill
and M. C. Dill, on the 31st day of May, 1877, alleging
that they were the only heirs of John Horton, deceased;
that their father died in the county of Dallas on the ——
day of ——, 1870, and at his death was seized and pos-
sessed of the several tracts of land numbered from one to
eight, as described in their petition, amounting in all to
about seventeen hundred acres; that these lands were
acquired before his marriage, and were his separate prop-
erty, though from the face of the title papers it appeared
they were the community property of the said Horton
and the defendant, C. M. Dill, the mother of plaintiffs,
to whom he was married in 1854; that on the 11th day of
September, 1870, after the death of their father, their
mother, C. M. Horton, now Dill, effected a settlement
and an adjustment with their half-sister, Orlena Bast,
and her husband, A. Bast, who was the only issue of a

prior marriage (in 1849) of their father with a Miss Margaret Hopkins, and deeded to said Orlena two hundred acres of said land out of tracts Nos. 2, 3 and 4, as a full satisfaction of her interest in the estate, and received from Orlena and husband a deed of the same date, relinquishing all her interest in the remaining lands. That their said mother intermarried with the defendant, M. C. Dill, who in a short time became involved, and to secure attorneys procured the assistance of his wife, and covered almost the entire landed estate with mortgages, deeds of trust and conveyances; that their half-sister, Orlena Bast, and her husband had on the date of the settlement gone into possession of the land set apart to them; had improved the same, made a homestead thereon, used and enjoyed it, and were then in the quiet and peaceful possession thereof, and they, plaintiffs, did not seek to disturb them; and Mary M. Camoron, for self, sought to avoid a trust deed in favor of the defendants, Thurmond and Ray, by her made, on the ground of fraud.

The petition asked that the lands be relieved of the various trust deeds, mortgages and other conveyances made by M. C. Dill and their mother, C. M. Dill, after their intermarriage, alleging them to be void for the want of power in the grantors to convey, though they created clouds upon their title, and asked that the real estate be divided and partitioned among them each one separately.

The defendants all filed answers, and Ray died, having sold out to the defendant Thurmond.

On the 11th day of January, 1877, Orlena Bast and husband intervened, and claimed that the lands were acquired during the existence of the marriage of John Horton and Margaret Horton, her mother; that she was entitled to one-half thereof as heir to her mother, and one-ninth thereof as heir to John Horton, her father, and one-thirty-seventh as heir to her half-brother, Enoch Horton; that the settlement made with the mother of

plaintiff (C. M. Dill) and her step-mother was procured through fraud and impositions of her uncles, brothers to John Horton; afterward she filed an amended answer, withdrawing the allegations of fraud, and charged a want of consideration in her deed of September 11, 1870, and, without tendering back the title, asked that the lands be partitioned according to her statement of interest.

The defendants claimed that the lands were acquired during the connubial partnership of John Horton and C. M. Horton, and that they held whatever interest the said C. M. Dill had prior to the execution of the same.

Subsequently W. M. Edwards was appointed special guardian for the said minors, and qualified as such on the 8th day of September, 1877.

On the 24th of November, 1879, the case was tried by the judge, a jury being waived, and was by the court taken under advisement until the 6th day of December, 1878, the last day of the term, and then no decree was read in open court or entered upon the minutes of court.

On the 13th day of December, 1879, at the next ensuing term of court, a decree was entered over plaintiffs' objection, as of December 6, 1879.

The circumstances connected with its entry are sufficiently stated in the opinion. The decree is lengthy and complicated, and its contents need not be stated.

*W. M. Edwards, A. W. Nowlin* and *Eblin & Robertson*, for plaintiffs in error.

*Stevens*, for defendants in error.

*J. A. H. Field*, for intervenor.

QUINAN, J. COM. APP.— The assignments of error on which the plaintiffs in error rely in their brief only will be noticed.

The first assignment of error: The court erred in allowing the defendants' and intervenor's motion to enter the judgment in this case of the 13th of December, 1879.

A bill of exceptions signed by the judge recites "that this case was submitted to the judge for trial on the law and the facts on November 24, 1879, and that the judgment was rendered in said cause on the 6th day of December, 1879, that being the last day of the October term of the district court of Dallas county for the year 1879, and that the continuance, after such submission on the 26th day of November, 1879, was not done by the consent of parties thereto and placed on record."

The 65th rule for the district court provides: "A cause that has been submitted for trial to the judge on the law and facts shall be determined and judgment rendered thereon during the term at which it has been submitted, and at least two days before the end of the term, if it has been tried and submitted one day before that time, unless it is continued after such submission for trial by the consent of the parties placed on the record." The judgment was entered on December 13, 1879, *nunc pro tunc*, as rendered December 6, 1879.

That this condition of the judgment, conceding it to be so rendered, is in direct violation of this rule, is evident.

The rule was adopted by the court upon mature consideration. It was suggested by experience of its necessity. It was not intended as a mere *brutum fulmen*. So palpable a violation of the rules prescribed cannot be disregarded. We are of opinion that for this cause the judgment should be reversed. March *v.* Huyter, 50 Tex., 250.

Another objection under this assignment to the judgment is, that it was not read in open court on December 6, 1879, nor was there any memorandum upon the judge's docket, or evidence before the court, to show that it had been rendered.

The judgment in the record was entered on December 13, 1879, on motion of the defendants and intervenor, "*nunc pro tunc*," as of date December 6, the last day of the preceding term, "informing the court that on that day a judgment was rendered in the cause" in the words and figures as shown in an exhibit A, attached and made part of the motion, and that the clerk failed, for want of time, to enter the same upon the records of the court.

The bill of exceptions reserved and signed by the judge on granting this motion, and entering of the judgment, recites " that the decree sought to be entered by the court was never read in open court on the 6th of December, 1879, . . . nor does it bear any file-mark of the clerk that it was ever filed in the cause. The court, after hearing the motion, and the paper attached and the memorandum on his docket as follows: " November 14, 1879. Defendant has leave to amend. Plaintiffs suggest the death of Mrs. Camoron and Mrs. Bast. November 24, 1879. Defendant Thurmond has leave to file first supplemental answer. Defendant Thurmond's special demurrer overruled. W. M. Edwards' fee fixed at $200, and taxed as costs. M. M. Miller, J. M. Haney and R. M. Cook appointed commissioners to partition the land in controversy. Plaintiffs except, and in open court give notice of appeal," added, this being all the evidence before the court it sustained the motion, etc.

To this was added: "I sign this bill of exception with this statement: that defendant Thurmond and intervenor Bast's motion to enter the judgment *nunc pro tunc* was sustained, and plaintiffs' exception overruled, because the judgment attached to said motion and sought to be entered is the exact judgment rendered by the court on the 6th day of December, 1879."

The question presented is not free from difficulty. A judgment is the decision of the law pronounced by the court — " the very voice of law and right." It is a judi-

cial act.  It is what is ordered and considered.  We confound commonly this judicial act with the ministerial one, of the entry of it by direction of the court in its records by its officers.  The paper attached to this motion is not a judgment — it is offered to show what was the judgment pronounced by the court.  That this was not read in court does not negative the fact that judgment was rendered.  The complaint is that a judgment was rendered but not entered, and the relief asked is that it be now entered.  All judgments must be entered in the minutes by the clerk under the direction of the court, for without this there can be no proof made of the judgment in other courts, and the party in whose favor it is rendered can have no benefit from it.

Where the judgment is pronounced and there is a failure to enter it, not from the fault of the parties, but from lack of time to extend it upon the minutes before the end of the term, it would be unjust to withhold from the party the benefit of his recovery.

Hence it has never been doubted that the courts have power, and have often exercised it, to enter up judgments "*nunc pro tunc.*"  Johnson *v.* State, 14 Tex., 456; Ximenes *v.* Ximenes, 43 Tex., 463.

But how shall it be proven that a judgment was rendered?  Mr. Freeman, in his work on Judgments, sec. 61, says the weight of authority sustains the rule that only by some entry or memorandum on or among the records of the court, can the rendition of a judgment be proved.  An entry must somewhere be found and produced in court, apparently made by authority of court.  It must be in some book or record required by law to be kept.  "A decree filed and signed by the judge when the law did not require such decrees to be filed and signed, and when no part of the record showed the rendition of any decree, was held insufficient to warrant its entry as the former decree of the court."

Here there was no record evidence before the court that any decree was rendered, except the meager entry upon the docket.` It is only by indulgence in very liberal conjecture that we can say, speaking from the docket or the record, that a judgment was rendered — a judgment final upon the merits. And certainly it does not appear for or against whom it was rendered. And if a judgment was, in fact, rendered, what was the extent and character of it? The paper attached to the motion of defendants is not supported by affidavit, nor was proof offered that it correctly described the judgment pronounced by the judge. If the character of the judgment delivered is to be so established by evidence outside the record, the testimony should be as full and ample and with all the sanctions necessary to establish any other fact. The judge's notes upon the docket, his opinion filed, when the law requires him to write and file an opinion, have been received. The evidence which, under our statute, is admissible to amend a judgment by, would be sufficient, doubtless, to supply one. So as, under a rule of court, it is required of the counsel of the party who has obtained the judgment to prepare the decree and submit it to the judge for his approval, testimony might be received to prove the character of the judgment rendered by the copy of the decree prepared, and that it had been accepted by the judge and ordered to be so entered. But here there is a judgment, spread over fifteen pages of the transcript, embracing a variety of subjects, and it rests for its authority and correctness solely upon the recollection of the judge at a subsequent term. His statement appended to the bill of exceptions goes to this extent, no more, that the copy which is attached to the motion contains exactly the judgment which he rendered. It is not his notes of his judgment; it is shown that this paper was not read from. It is not a filed paper or a record of the court. We doubt the sufficiency of all this to warrant the entry

of the judgment. Certainly it would be insufficient to amend one. Ximenes v. Ximenes, 43 Tex., 463.

It is unnecessary, however, to decide the question raised, as the judgment, for the other error indicated, will be reversed. It is noticed to express, in view of the evils which might result from lending too easy an ear to applications to supply omissions and imperfections in the records of the court after the term, our conviction that the proof to warrant it should be absolute and definite — absolute from the record that a judgment was rendered, and its terms and provisions distinctly established by competent testimony. Price v. Likens, 23 Tex., 635; Messner v. Hutchins, 17 Tex., 597.

The sixth assignment of error is that the court erred in allotting to the intervenors the one-half of the A. B. Wilson tract.

It cannot be said, in looking into the case as presented by the record, that this assignment is well taken. If it were admitted that there was proof that the separate property of John Horton (his headright certificate) was embraced in the consideration paid for the lands in controversy, there is none to show that it was applied specifically for the Wilson tract; nor is the proof of its value, nor any basis laid upon which the court could act to decree this Wilson tract to be separate property of John Horton. But though this assignment may not be sustained, yet as the case will be remanded, and as we believe that the court erred in its ruling upon the admission of testimony offered to establish the fact that this Wilson tract of land was in fact received in exchange for the Horton headright, it is proper we should refer to the points reserved by bills of exception, and intimate our views with regard to them.

The suit is by the children, seven in number, or the representatives of the children, of John Horton, deceased, against his widow and others. The object is to

have partition of the estate of John Horton and to relieve it of incumbrances. The lands of the estate are described in the petition; amongst them the Wilson tract. It is averred "that although it appears from the date of the deeds and other title papers to said lands, that the same were acquired during the existence of the marriage of their father and their mother, which took place in March, 1854, that the same is the separate property of their father, John Horton, deceased, and was acquired by him with his separate means and money," etc.

On the trial plaintiffs offered to prove by the witness Read that the consideration of the deed from James Horton to John Horton, of date July 22, 1856 (in which is included this Wilson tract), was other lands, the separate property and the headright of John Horton, conveyed on the same day by John Horton to James Horton; but this testimony was excluded "because of want of allegations in plaintiffs' petition to support such evidence."

Manifestly this ruling was erroneous. The allegations of the petition were sufficiently specific to permit the introduction of the proof. Indeed it is not easy to perceive how, without setting out at large he would prove the facts, the averments could have been more definite. It is never necessary to set out the testimony in the pleadings.

But there certainly was proof upon the trial, which seems to have been admitted without objection, that the facts were as the testimony of Read proposed to establish them. It appears that John and James Horton were brothers and partners, and engaged in locating and acquiring lands together; that the headright certificate of John Horton was acquired by him as a single man; that he located the land and settled upon it while he was a single man; that John and James divided their joint acquisitions by deeds executed by each to the other, simultaneously conveying to each the part set apart to him; and that among the lands so set apart to James Horton

and deeded to him was this John Horton headright. So that in effect it formed part of the consideration for the lands deeded to John Horton.

The decree, therefore, of the court which adjudges all the lands embraced in the conveyance to John Horton to be the community property of himself and his first wife, cannot, at least to this extent, be right. Clearly, so far as this headright or its value formed part of their consideration, he had a separate estate in them.

The seventh assignment of error is: The court erred in deciding that a deed from Orlena Bast and husband to Clarinda M. Horton, surviving widow of John Horton, deceased, and the deed from Clarinda Horton (now Dill) to Orlena Bast, both of the 11th of September, 1870, were void for failure of consideration and want of power and authority of or in the said Clarinda M. Horton to make the conveyance to the said Orlena Bast.

Orlena Bast, a daughter of John Horton by his first wife, intervened in this suit, alleging that all the lands sought to be partitioned were acquired during the marriage with her mother, and claiming one-half as heir of her mother. Shortly after her father's death, on September 11, 1870, it appears that an arrangement was made between her and the widow as a settlement of the estate of her father, by which the widow conveyed to her two hundred and ninety acres of the land, and she released to the widow all interest in the residue of the estate. This, Orlena avers, was made and procured through fraud and false representations; that it was without consideration; and that the widow had no authority make her a conveyance. She asks that it be set aside.

The decree of the court is, "the said Clarinda M. Horton's attempted conveyance of the said land was without power and authority in her to make the same, and that by reason of said want of power and authority in said Clarinda M. Horton, the consideration for which the deed

from said Bast to her was made has wholly failed;" it is adjudged that the two deeds be annulled, etc.

This judgment, upon the facts as developed in the record, was in our opinion erroneous. The deed from Clarinda Horton to Orlena Bast was not wholly without consideration. She was tenant in common of the estate of John Horton with the other heirs. She had a large interest in the estate, and whatever interest in the land she had, passed by her conveyance to Orlena. It appears from the judgment in this case that the community estate of herself and her husband was six hundred and forty acres of the lands; that as heirs of the deceased son, Enoch, she had an interest of one-half his share of the. estate; that she also had a life estate of one-third in her husband's share of the lands not belonging to their community. Of the land which she conveyed to Orlena, the tract No. 3 was of that community.

The deed of one tenant in common to a specific portion of the common property is not void. It will not be suffered to prejudice the rights of co-tenants. It will be, on principles of equity, respected so far as it can, consistently with the rights of others. So in Arnold v. Cauble, 49 Tex., 533, Chief Justice Roberts said: "Where there is but one person holding under a co-tenant, or several holding small portions comparatively, so that it is practicable, equity would require that partition should be made so as to leave them in possession of the land sold to them, and especially where they have made improvements on such portions, by setting apart that part of the land to the co-tenant that is their vendor."

Upon the execution of the deed from Mrs. Horton to Orlena, she went into possession of the property conveyed, and has remained ever since in undisturbed enjoyment of it. The settlement has been acquiesced in by the other heirs of Horton, nor is it attempted to be repudiated by them in this suit.

There is no room to doubt that by Clarinda's ·deed to Orlena she not only acquired all her actual undivided interest, but that on partition, if not prejudicial to the interests of the other co-tenants, all the land conveyed to her would be set apart to her. Clarinda's interest in the whole estate would, it seems, have exceeded the quantity of land deeded to Orlena. Fitch v. Boyer, 51 Tex. 336.

But it appears further from the proofs, that this arrangement between Clarinda and Orlena was made to avoid litigation, to compromise doubtful questions, and as a family settlement. What the respective rights of the parties in the estate of John Horton were, was not very clear. The legal presumption was, that it was all the property acquired during the second marriage. The deed of 1856, by which the title to the lands passed to John Horton, strengthened that presumption. Even now in this transcript the proof is very vague which rebuts that presumption or tends to show that the property was acquired during the first marriage, rather than before any marriage. It presented a fair occasion for compromise and adjustment. Such arrangements are always regarded favorably by the courts.

"An agreement entered into upon a supposition of right or of a doubtful right, though it often comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties, for ·the right must always be on one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation of an agreement." Leading Cases in Eq., 1675. And again it is said: "It is clear that when parties enter into a compromise or family arrangement in order to avoid litigation, the question as to whether one of the parties is entitled to certain property or not, such compromise will not be set aside, although it should eventually turn out that the party taking

something under the compromise was in reality legally entitled to nothing."

But the parties in making such agreement must act in perfect good faith, without concealment, misrepresentation of facts, or fraud.

"A deliberate settlement of a controverted right will not be set aside except for those cases which, like fraud, mistake, or undue influence, invalidate all contracts; and it is not, therefore, sufficient ground for opening and rescinding such an agreement that it is harsh or unequal in its operation." French v. Shoemaker, 14 Wall., 314; Bennet v. Paine, 5 Watts, 261.

Whether the settlement between Mrs. Horton and Mrs. Bast should be set aside would depend upon the fairness of the transaction, the good faith on which it was conducted, whether she was induced to execute it through fraudulent representations or concealment of information, or undue influence, and would not be avoided, if otherwise fairly made, merely because of the disproportion in value of the lands she received and that which she might legally be entitled to recover.

Other points are presented in the briefs, which, however, it is unnecessary to discuss, as they are not likely to again arise.

We are of opinion the judgment ought to be reversed and the case remanded.

REVERSED AND REMANDED.

[Opinion delivered November 28, 1881.]