RAMIREZ et al. v. LASATER et al.
(No. 5415.)

(Court of Civil Appeals of Texas. San Antonio.
Feb. 17, 1915. Rehearing Denied
March 17, 1915.)

1. INSANE PERSONS ⊂∞72 — IDIOTS — CONTRACTS.

A person shown to have been an idiot from birth, unable to read and write or to perform the simplest tasks, cannot be held competent to have entered into a contract.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 125; Dec. Dig. ⊂∞72.]

2. MORTGAGES ⊂∞208—OBLIGATION—LIABILITY.

Thought a landowner mortgaged part of his estate to secure a debt, his whole estate was liable therefor.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 563–567; Dec. Dig. ⊂∞208.]

3. PARTITION ⊂∞26—ESTOPPEL.

A landowner who had mortgaged part of his estate died, and those children who had attained their majority conveyed the mortgagee a part of the property to secure a release of the remainder. Plaintiffs, who were then minors, united in a partition of the remaining property on reaching their majority. This parcel was more than sufficient to have protected plaintiffs' interest. Held, that as plaintiffs admitted that their purpose was not to recover anything from their brothers and sisters, but from the mortgagee and those claiming under him, they were estopped to attack the conveyance, because of the partition.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 68–71, 75; Dec. Dig. ⊂∞26.]

4. TENANCY IN COMMON ⊂∞45—SALES BY COTENANTS.

While one tenant in common cannot convey a specific portion of the land to the detriment or prejudice of his cotenants, the conveyance of the particular tract by plaintiffs' brothers and sisters will be upheld in favor of a purchaser who made improvements; the whole tract being of similar character.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 135–137; Dec. Dig. ⊂∞45.]

5. INSANE PERSONS ⊂∞60—DEEDS—VALIDITY.

A deed of an idiot is not binding on him.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 93–99; Dec. Dig. ⊂∞60.]

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by Maria Ramirez and others against Ed. L. Lasater and others. From a judgment for defendants, plaintiffs appeal. Affirmed in part, and reversed and rendered in part.

S. H. Woods, of Alice, and T. O. Woldert, of Corpus Christi, for appellants. G. R. Scott and Boone & Pope, of Corpus Christi, and Dougherty & Dougherty, of Beeville, for appellees.

CARL, J. The plaintiffs in the suit were Maria Ramirez, Rafael Ramirez, and Cesario Ramirez, and it was originally filed in Duval county. Subsequently, by agreement, the case was transferred to Nueces county, where it was tried and judgment went against the plaintiffs (appellants here). We adopt the following statement of the case as made by appellees:

"This was a suit in trespass to try title and for partition of an undivided three-elevenths of a tract of 2,500 acres in Duval county, part of an original grant of five leagues known as 'San Pedro de Charco Redondo.' The suit was filed in June, 1905. The plaintiffs in the case were Maria Ramirez, Rafael Ramirez, and Cesario Ramirez. The sole defendant named in the original and first amended original petitions filed June 15, 1909, was Ed. C. Lasater. By their

⊂∞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

second amended original petition filed December 24, 1913, plaintiffs complained of the defendants Jose Guerra, Emetitio Guerra, Antonio Guerra, Francisco Guerra, Zaragoza Guerra, and Rafael Guerra, Manuel Pinada and his wife, Santos Lopez Pinada, and Adolfo Garcia, and for the first time asserted title against them.

"Plaintiff Cesario Ramirez, for the first time, in said second amended original petition, alleged his idiocy.

"By his fourth amended original answer on which trial was had, defendant Ed. C. Lasater disclaimed as to 1,600 acres of the tract in controversy, alleging that he had conveyed the same prior to the institution of the suit. As to the remaining 900 acres, Lasater pleaded not guilty, the statutes of three, five, and ten years' limitation, improvements in good faith, and especially that the tract of 2,500 acres out of which plaintiff sought to recover a three-elevenths interest was a part of a tract of 3,824.98 acres and formerly owned by Jose Ramirez, deceased, who died intestate on the 31st day of August, 1894; that prior to the death of Ramirez he had mortgaged 2,500 acres of land (the tract in controversy) to one Pena to secure an indebtedness evidenced by a note of $2,500, and at Ramirez's death the indebtedness remained unpaid and the lien undischarged; that he left surviving him a widow and 11 children, to wit, plaintiffs and eight others, and that said children and Anselma Ramirez, his widow, inherited the tract of 3,824.98 acres charged with the debt; that on the 9th day of July, 1898, all of the children of Jose Ramirez and wife save the plaintiffs joined in a deed whereby they conveyed to one Francis Smith the 2,500 acres in controversy in liquidation of the note for $2,500 and discharge of the lien; that after the conveyance of the 2,500 acres there remained 1,324.98 acres of land of the same character of soil and of the same market value, acre per acre, aside from the improvements placed thereon by defendant Lasater and his vendees, codefendants; that all of said Ramirez children held said remaining 1,324.98 acres in common until long after the filing of the suit to partition the 3,824.98 acres, and that on November 16, 1908, during the pendency of the suit, and without the knowledge or authority of the court, or of Lasater, the plaintiffs and the other eight heirs of Ramirez (Smith's vendors) proceeded to divide up the 1,324.98-acre tract—the equities of all these defendants being in issue by the pleadings filed at the time in this cause. Defendant Lasater further pleaded that the 1,324.98 acres was more than sufficient legally and equitably to protect any interest that plaintiffs had in the land; that notwithstanding this fact plaintiffs ignored their own rights and the rights of defendant Lasater, and with full knowledge of his equities in the land by virtue of his purchase of the 2,500 acres, conveyed and partitioned said 1,324.98 among themselves and the other eight children of Ramirez, who were at the time defendants in said cause, all of whom had knowledge of Lasater's rights; that therefore plaintiffs were estopped to repartition the whole or to recover of Lasater any part of the 2,500 acres. Lasater further pleaded that said partition of November 16, 1908, was fraudulent and collusive, and made for the purpose of subjecting the 2,500 acres to partition and avoiding the equities of Lasater by endeavoring to place the 1,324.98-acre tract beyond the power of the court to divide among them so as to protect the interests of plaintiffs, if any they had, and that plaintiffs were estopped thereby from asserting any claim to the 2,500-acre tract; that defendants had erected valuable improvements upon the tract, and should be quieted in their title and possession of the land, and in the alternative, if the court should hold that the 2,500 acres should be partitioned, then that the whole tract of 3,824.98 acres be partitioned; that the partition of November, 1908, be disregarded, and that the interests of plaintiffs be set apart to them out of the 1,324.98 acres; and that defendants' interest be set apart to them out of the 2,500-acre tract, including their improvements.

"The defendants Juan Jose Guerra, Emeterio Guerra, Antonio Guerra, Francisco Guerra, Zaragosa Guerra, and Rafael Guerra, Manuel Pinada and wife, and Adolfo Garcia, who held title by purchase under Lasater, adopted his answer, pleaded not guilty as to the tracts purchased and held by each, respectively, and disclaimed as to the balance of the land, pleaded their improvements, the various statutes of limitations, and prayed for the same relief, and that if the 2,500 acres were partitioned, the various tracts purchased by each be set apart to them respectively, as described in their deeds.

"The defendants Encarnacion Ramirez, Pedro Ramirez, Yldefonso Ramirez, Santos Ramirez, Agapito Ramirez, Cleofas Ramirez, Delicita Ramirez de Ysaguirre, joined by her husband, Diego Ysaguirre, Ricarda Ramirez de Chapa joined by her husband, Pedro Chapa, the eight other surviving children of said Jose Ramirez and wife, both deceased, answered plaintiffs' petition. In substance they pleaded the death of the common ancestor of plaintiff and themselves, the inheritance of the 3,824.98 acres, their sale of a specific 2,500 acres to F. Smith, the subsequent purchase of same by Lasater and his improvement thereof; that at the time of the conveyance to Smith plaintiffs were minors and incompetent to join in the conveyance to Smith, but that the conveyance was made for the mutual benefit of all the heirs of Ramirez and to avoid the loss of the entire inheritance, that the land brought its reasonable market value at the time of the sale, and that, with knowledge of these facts, and after plaintiffs and the last-named defendants had reached their majority, they partitioned the 1,324.98-acre tract among themselves, and had ratified and acquiesced in the conveyance to Smith which was made for the joint benefit; that each of said Ramirez heirs, defendants, had erected certain improvements upon the various tracts so set apart to them under the deed of partition of November 16, 1908, and were in possession of same; that the entire tract of 3,824.98 acres was of the same character and value, and that if the court should decree a partition, then that the 2,500 acres which had been conveyed by them by metes and bounds be set apart to Lasater and his vendees, and that the partition of the 1,324.98 acres made in November, 1908, be confirmed, and that they be quieted in their possession of same.

"By second supplemental petition plaintiffs aver that after the said 2,500 acres had been conveyed to said E. C. Lasater, to wit, on the 16th of November, 1908, the said 11 children of Jose Ramirez, deceased, including plaintiffs, executed among themselves the deed of partition of the remainder of the 3,824.98 acres, and each and all of said parties to said partition deed have received and accepted the shares assigned to them in and by said partition deed."

The property in question was the separate estate of Jose Ramirez, who died intestate about August, 1894, and left surviving him his wife, Anselma Salinas de Ramirez, and 11 children, who are the plaintiffs and some of the defendants in this cause.

On June 11, 1894, Jose Ramirez executed and delivered to L. P. Pena a note for $2,500, bearing 10 per cent. interest per annum, and providing for 10 per cent. attorney's fees, in the usual form, due two years after date, and secured the payment of same by a deed of trust lien on 2,500 acres undivided interest in 3,824.98 acres of land in Duval county, Tex., which entire tract was Jose Rami-

rez's interest or share in the tract known as San Pedro de Charco Redondo, originally granted by the state of Tamaulipas, Republic of Mexico, to Rafael Ramirez, and patented by the state of Texas to said Ramirez, his heirs or assigns, on August 29, 1856. This note and lien are transferred to and became the property of Francis Smith before the maturity of the same; and on or about July 9, 1898, Anselma Salinas de Ramirez, the surviving wife of Jose Encarnacion Ramirez, Yldefonso Ramirez, Santos Ramirez, Pedro Ramirez, Ricarda Ramirez de Chapa, joined by her husband, Pedro Chapa, Felicita Ramirez de Ysaguirre, joined by her husband, Diego Ysaguirre, Agapito Ramirez, and Cleofas Ramirez conveyed to Francis Smith 2,500 acres of the land by metes and bounds, in satisfaction of the debt represented by said note. This 2,500 acres specifically conveyed was taken out of the 3,824.98-acre tract, in which the 2,500 acres so securing the note was an undivided interest. This conveyance was by general warranty deed, which was recorded in that county August 12, 1898, having been filed the day before. The plaintiffs did not join in that deed. On August 13, 1898, Francis Smith executed and delivered a release to said land from the trust lien to the parties, who conveyed the 2,500 acres to him, and same was filed for record in Duval county on October 13, 1898. Smith conveyed said 2,500 acres of land to Ed. C. Lasater for a consideration of $5,042.-22, on March 27, 1899; but the deed contained this clause attached to the warranty clause:

" * * * By, through or under me, save and except as to Faustina Resendes de Pena against whom I warrant generally against any and all persons claiming title by, through or under said Faustina Resendes de Pena."

Immediately after said purchase, Lasater went into possession, and he and those claiming under him have continuously been in possession thereof ever since, using and enjoying the same, and paying taxes thereon, and holding the same under said deed, which conveyed all of said 2,500 acres, and not merely the grantors' undivided interest therein.

The surviving wife of Jose Ramirez died intestate November 23, 1907, and no administration was had on her estate. The court found that all of the 3,824.98 acres of land is practically of the same character, quality, and value, and this, of course, included the 2,500 acres sold to Francis Smith.

On December 14, 1900, Lasater sold 1,200 acres out of the 2,500 acres to Jose Guerra, Emeterio Guerra, Antonio Guerra, Francisca Guerra, Zaragosa Guerra, and Rafael Guerra for a consideration of $1,200, which was described by metes and bounds. The deed was recorded March 6, 1902, and the grantees in said deed immediately went into possession of said 1,200 acres and have since been holding and asserting title thereto; their possession

has been continuous, exclusive, and adverse, and previous to their purchase this 1,200 acres had been segregated from the other and inclosed by a substantial fence. On June 18, 1904, Lasater conveyed 400 acres out of said 2,500-acre tract to Manuel Pinada and his wife, and this deed was filed March 14, 1905, and the grantees therein went immediately into possession and have since continued in exclusive adverse possession thereof, cultivating, using, and enjoying the same. Both of the above deeds were general warranty deeds. On November 16, 1908, by an instrument in writing signed and acknowledged by each of them, Maria S. Ramirez, Cleofas Ramirez, who signed the same as Cleofas R. Salinas, Felicita R. de Ysaguirre, joined by her husband, Diego Ysaguirre, Encarnacion Ramirez, Yldefonso Ramirez, Agapito Ramirez, Ricarda R. de Chapa, joined by her husband, Pedro Chapa, Santos Ramirez, Pedro Ramirez, Cesario Ramirez, and Rafael Ramirez, subdivided and partitioned among themselves the remainder of said land which was estimated to contain 1,313 acres, after deducting the Lasater 2,500 acres, and this instrument was duly filed for record and duly recorded on November, 1908, and are each yet in possession of the respective tracts set apart to them therein. On June 11, 1894, the title to the land in controversy was in the plaintiffs below.

The sale to Smith was made in satisfaction of the $2,500 note secured by lien against the 2,500 acres undivided interest in the 3,824.98-acre tract, and the entire estate of Jose Ramirez was liable for said debt, and the nine grantors in said deed warranted the title thereto generally, and the deed conveyed a well-defined 2,500 acres by metes and bounds, which is a part of the 3,824.98-acre tract. The purchase of the 2,500 acres was made in good faith by Lasater, and he has made valuable improvements thereon, and his use and possession thereof has been continuous, peaceable, and adverse to all the world to all of said land, except as to that sold as above set out, and he rendered and paid taxes thereon, and his title was never questioned until this suit was filed. Lasater and his vendees have paid the taxes on said land since their respective purchases, and all of them have made valuable improvements. After the sale of the 2,500 acres to Francis Smith, there remained 1,324.98 acres of the 3,824.98-acre tract, which all 11 of the heirs of Jose Ramirez partitioned among themselves, subsequent to the filing of the suit, without the knowledge or consent of the court, or of the said Lasater and his vendees; and the respective heirs went into possession of the shares allotted to them in such partition and have improved the same and are still in possession thereof. The court found that this partition was made for the purpose of perpetrating a fraud on the court by putting it out of the power of the court to

adjust the equities and as a fraud against Lasater and his vendees.

[1] The trial court also finds that Cesario Ramirez is a paralytic and has been crippled from birth, is weak-minded, but has lucid intervals, and that there is no proof that at the time he joined in the partition deed to the 1,324.98 acres, he was of unsound mind. This court, however, does not agree with the trial court in this finding, for the overwhelming testimony is to the effect that he was and is an idiot, or at least an imbecile to such an extent as to be totally incompetent to make or to understand the nature of a contract, and we so hold. The testimony is practically uncontroverted that he has been in his present condition since birth; the family physician said he had been practicing in the family for 15 years, and he says Cesario is an idiot. No witness undertakes to state any fact which would show him to be able to understand or to make a binding contract. To hold that an imbecile or idiot, who could not talk intelligently and who could not read and write, who could not drive a wagon or go 50 yards to a store and back by himself, and who does not know how to buy a dime's worth of coffee or sugar, could make a valid and binding contract would be a travesty on justice and destroy the protection that the strong arm of the law throws around these unfortunate people. The fact that his name was placed in the pleadings as a plaintiff, and that he did not appear by next friend until about the last amended petition was filed is absolutely immaterial. The one important thing is the condition of his mind; and if he was not of sound mind, what others did for him or in his name was not in any sense binding on him.

When the heirs made the partition of the 1,324.98 acres of land, on November 16, 1908, they took into consideration the fact that the 2,500 acres had been conveyed, and that they were partitioning all that was left. And the plaintiffs, except Cesario, who is non compos mentis, did not expect anything out of the shares of the other heirs. The plaintiffs had pleaded that the heirs had received and accepted their shares so assigned to them in the partition. And the court found that, by their knowledge of the proceedings and by their conduct, the plaintiffs were estopped from asserting any claim to the land in controversy, or to the shares of the other heirs in that assigned to them out of the 1,324.98 acres, because they not only testified that they did not want to recover anything as against the other heirs, and in open court, through their attorneys, stated that they were unwilling to take any interest that they might have out of said tract, since they had partitioned same in a manner satisfactory to themselves. Since all of said heirs knew that the 2,500 acres had been conveyed in settlement of a debt due by the estate and which was a charge upon it, and before they partitioned the remainder among them, and treated that as satisfactory, by partitioning such remainder with each other without taking into consideration any interest the plaintiffs may have had by reason of not joining in said deed, the plaintiffs, except Cesario Ramirez, would be, and are, estopped now to question the title so passed to Francis Smith and now held by Lasater and his vendees.

### Conclusions of Law.

[2-4] The heirs who conveyed the 2,500 acres of land warranted title thereto generally, and were liable on that warranty for the land conveyed. The debt they satisfied by conveying said land was not only a lien burden on the 2,500 acres undivided interest, but was a burden on the entire estate of Jose Ramirez. If the land given as security has not satisfied that debt, the balance would have been a provable claim against the estate of Jose Ramirez, and by the $2,500 so being paid, the plaintiffs below, as well as the other heirs, were benefited, for the reason that the remainder of the land was thereby freed of debt. The plaintiffs, with full knowledge that this 2,500 acres had been conveyed, not as an undivided interest but as a whole, and the purposes for which it was conveyed, permitted the heirs who made that conveyance to share equally in the remaining 1,324.98 acres, and said on the trial they knew all about that sale and the purposes for which it was made, at and before the partition of the remainder was made. No offer has ever been made to return any part of the debt satisfied by the conveyance of said land. And we hold that the plaintiffs below acquiesced in the sale to Smith by the other heirs, and ratified the same by their conduct in making settlement in partition.

"I knew that Mr. Lasater held the 2,500 acres. We partitioned this 1,300 acres among ourselves, deducting the 2,500 acres of Mr. Lasater's."

This is the testimony of Miss Maria Ramirez, and she proceeds:

"I knew that my brothers and sisters and my mother had conveyed the 2,500 acres that I now claim an interest in, in settlement of my father's debt. * * * At the time I executed the partition deed, at the time I brought suit, and at all times, my idea was not to take anything from my brothers, and that is the reason that we gave them their full share in the 1,300 acres. It was our idea that we would just recover this from Mr. Lasater and those who claim under him. At the time of the execution of this partition deed the purpose of it was to recover from Mr. Lasater our interest in the 2,500 acres, and to divide the 1,300 acres in such a shape that that would be settled, and that we couldn't recover anything out of it. That was the idea. I was then of age. That is exactly my purpose, and that is what I want to do here."

In Talkin v. Anderson, 19 S. W. 354, decided by the Commission of Appeals, and affirmed by the Supreme Court, it was said:

"We understand the law to be that one tenant in common cannot convey a specific portion of the common land to the detriment or prejudice of his cotenant, but that, subject to

this limitation, such a conveyance will be upheld in equity, and the vendee's right to the specific land will be sustained when the circumstances render this course equitable."

It is found by the court and not excepted to, that the sale to Smith was fair and equitable. The eight heirs who conveyed to him owned 2,781.76 acres. The plaintiffs were entitled to and owned 1,043.16 acres in the whole 3,824.98 acres, and there were 1,324.98 acres left after the sale of 2,500 acres to Smith, and the land was all of the same quality and value.

Again, in Maverick v. Burney, 88 Tex. 561, 32 S. W. 512, the Supreme Court, through Chief Justice Gaines, said:

"It is held in many jurisdictions that the deed of a tenant in common to a specific parcel of the land held in common by him with others is absolutely void. But it is settled in this court by a long line of decisions that such a deed is good as between the parties, and is voidable only by the cotenants of the grantors, and not by them except in so far as it may affect their rights" (citing Arnold v. Cauble, 49 Tex. 527; March v. Huyter, 50 Tex. 243; Fitch v. Boyer, 51 Tex. 336; Camoron v. Thurmond, 56 Tex. 22; Rutherford v. Stamper, 60 Tex. 447).

These parties (the eight heirs) warranted the title to the 2,500 acres, and there was ample land left, out of which plaintiffs could protect their rights, but which they voluntarily partitioned without so doing. Smith's vendees would undoubtedly have the right to have the specific 2,500 acres set apart to them in a partition, and adjustment, because there was no difference in the character of the land, and they had made valuable improvements on it; and they also had the right to hold the shares of the eight heirs who conveyed upon their warranty. In Cook v. Railway, 3 Tex. Civ. App. 125, 22 S. W. 1012, it is said:

"While it has been held that the deed of a tenant in common for a portion of the land by metes and bounds is void, the recognized doctrine in this state is that such a deed will convey an equity which the grantee has a right to assert in a suit for partition, and to have the land conveyed set apart to him in the partition, if it can be done without prejudice to the other tenants in common. Plaintiffs in this case, after the sale by their cotenants to the defendant [railway company], proceeded to partition the remainder of the land among themselves. The partition was exclusive of the land conveyed to the defendant, and they did not make it a party to such partition, but in fact cut themselves off from the power to have any other partition with the defendant, such as would recognize its right to have the land in controversy set apart to it. Such proceedings were equivalent to a recognition of the right of the defendant to have the land set apart to it, because all of the rest of the land was appropriated by plaintiffs, and the defendant could not have a proportional part of the land set apart to it elsewhere in the tract if it should appear inequitable for it to remain the identical tract conveyed to it by plaintiffs' cotenants."

[5] What we have said as to plaintiffs ratifying or acquiescing in the settlement made by the conveyance of the 2,500 acres to Smith, and estoppel now to claim any part

of the same, does not apply to Cesario Ramirez, whose mental condition was and is such as to preclude the idea that he could legally acquiesce in or ratify any contract. It is therefore the opinion of this court that the judgment of the trial court should be and the same is hereby affirmed in all things, except as to Cesario Ramirez, in whose favor the judgment of the trial court is reversed and judgment here rendered that the said Cesario Ramirez do recover against Ed. Lasater and his vendees, defendants herein, an undivided one-eleventh of the 2,500 acres of land involved in this suit.

One-third of the costs will be adjudged against appellees, and the other two-thirds is adjudged against Maria Ramirez and Rafael Ramirez and their bondsmen.

The judgment is affirmed in part and reversed and rendered in part.