### DOCK PEGUES ET AL. V. MARGARET E. HADEN.

#### No. 2630.

1. **Parol Contract Supplied by Written.**—A parol agreement not acted upon is merged by a written contract upon the same subject by same parties.

2. **Parol Agreement—Consideration.**—A parol contract, not executed and without consideration, for the partition of an estate by which parties not entitled to take were to participate, can not be enforced against the party whose property was to be used in supplying the shares to those not so entitled to take.

3. **Compromise of Doubtful Right.**—When a doubtful right is in controversy, or where the object is to avoid or to settle litigation, a compromise duly executed will not be set aside if the parties act in good faith and there is no fraud nor misrepresentation.

4. **Same—Case in Judgment.**—A mother died leaving a daughter and grandchildren. A parol agreement was made for the partition of the estate, it being community, between the daughter and the grandchildren, whose parents were also dead, whereby they were to take in partition with their aunt. The cattle and horses of the estate were divided in accordance with the agreement. The grandchildren claimed as heirs to the real estate. The descent was cast in 1879. *Held*, that the partial partition in accordance with the agreement was not an estoppel, nor was the contract binding upon the daughter.

5. **Cases Adhered to.** — Burgess v. Hargrove, 64 Texas, 110, and Cartwright v. Moore, 66 Texas, 55, adhered to.

APPEAL from Houston. Tried below before Hon. F. A. Williams.

This suit was brought by appellee Margaret E. Haden, February 23, 1887, a daughter of Phillip and Eliza Alston, deceased, to establish her claim against appellants to four-sixths of the entire estate which was community of her deceased parents, Eliza and Phillip Alston, claiming by inheritance from Eliza all her one-half and by will of Phillip one-third of his half. There were originally four children, but all deceased at the time of the death of Phillip and Eliza except plaintiff. Defendants are descendants of the deceased children, and claim that plaintiff is only entitled to one-third of her father's estate by his will and one-fourth of her mother's half of the community as her heir. Defendants also set up that they and plaintiff in 1879 entered into an agreement and settlement of the estate on the basis as claimed by defendants, which was in part executed, and would have been fully executed but for a suit for

$28,000 or $30,000, brought against the estate of Phillip. Eastham Bros. having bought out some of the defendants, intervened, setting up same answer as defendants. The cause was tried by the judge at the Fall Term, 1888, establishing the claims of plaintiff and ordering partition accordingly. The appeal is to reverse the decision made by the court below.

Eliza Alston died in 1877, and Phillip in May, 1879. After the death of his wife, Phillip Alston, on March 18, 1879, made an independent will, appointing his brother Henry F. Alston executor. The part of the will affecting the rights of the parties to this suit is as follows:

"Secondly, I will and bequeath to my beloved daughter Margaret E. Haden and her children one-third of my estate, she to give to her children as she may think proper; all the balance of my estate to be generally divided between my other grandchildren.

"I wish my two grandsons, Robert A. and Angus D. Alston, to live with my daughter Margaret E. Haden ou my home place, and to cultivate one hundred and fifty acres of land in my prairie farm, and the land at my home place, and to have sufficient team to cultivate the same, the net profits to be equally divided between them, she to have the one-half and they the other."

This will was duly probated in Houston County.

There was what a witness calls a general verbal agreement between the parties interested and claiming interests in the estate of Phillip and Eliza Alston "to divide the community estate of Eliza Alston, deceased, in four equal parts, Mrs. Haden to take one part and the other heirs to take three-fourths—that is, each set of heirs, there having been originally four children, to take one-fourth." This agreement was in 1879, at which time there were two minors, grandchildren of Phillip and Eliza, to-wit, Alice Hutchings and Lena Davis, answering in this suit by their guardian *ad litem.*

Subsequent to this, on September 17, 1879, a written agreement was entered into, signed by plaintiff and some of defendants sued, viz., M. E. Haden (plaintiff), G. C. Davis (father of Lena Davis, the minor sued), R. H. Alston, A. D. Hutchings, Kate Hutchings (not sued), Mamie Cabiness, L. P. Hutchings, and Robert Hutchings. This agreement empowered Henry F. Alston, executor of Phillip Alston's will, to make a division of the cattle belonging to the estate, "there being an emergency to make disposition of the cattle." The agreement contains the following, as to how the division should be made: "And we agree that said division be made to the heirs or legatees according to the will, so far as Phillip Alston's estate is concerned, and according to the statute of inheritance, so far as the interest of the estate of Eliza Ann Alston is concerned."

The statement of facts contains the following: "Defendants read in evidence a written agreement of date September 24, 1879, signed by the

heirs, wherein they agree to a division of the community estate of Eliza. Alston under the laws of inheritance of the State."

The agreement lists a division of mules, which had been set aside to estate of Mrs. Eliza Alston, among the four sets of claimants, two mules to the Parish heirs, two to Mrs. Haden, two to the Hutchings heirs, and two to Robert and Angus Alston. This distribution was not equal in value to each, the value of the mules set apart to Parish being $135, to Mrs. Haden $110, to the Hutchings heirs $70, and to Robert and Angus Alston $40. In the same writing is a list showing a division of the mules and horses between the estates of Eliza and Phillip Alston, the mules being set apart to Eliza Alston's estate and the horses to Phillip's. Then follows an agreement to abide by the division of the mules so made, signed by E. L. Parish, whose wife Alice represented one share, A. D. Hutchings, G. C. Davis, M. E. Haden, A. D. Alston, and R. H. Alston.

Then follows an agreement, signed by the same parties of the same date, as follows: "Division of cattle, 1879, September 24. The community half was one hundred and forty-six head, which was equally divided between the four legal heirs. The above division was made at our request by Mr. H. F. Alston, and which we hereby agree to abide by."

Robert Hutchings testified that the division of the personal property, as shown by the foregoing, was made pursuant to the verbal agreement and was in part performance thereof. It was also shown that the reason the real estate was not so divided was because one Lee Parish brought suit against the estate of Phillip Alston, deceased, for $28,000 or $30,000, which was pending until 1886, and that soon thereafter H. F. Alston, the executor of the will of Phillip, died.

The court in his conclusions of fact found that the division of the stock as shown was in pursuance of the written agreement of the 17th day of September, 1879, and not pursuant to the verbal agreement previously made. The court in his seventh finding of fact says Mrs. Haden has occupied and used the homestead place and land referred to in the will without objection of the other heirs, and with their consent. There is no evidence, however, that in the agreement for a division the others agreed for her to do so.

The only evidence upon this finding is that of Lampkin, who says: "She, Mrs. Haden, stays on the home place and 150 acres of land in the prairie field jointly with Robert and Angus Alston." Other findings of the court need not be stated; they were found as hereinbefore stated. His conclusions of law are as follows:

1. That on Mrs. Alston's death her half of the community estate vested in plaintiff.

2. That by the written agreement and actual divisions of the stock the title to such of the stock as plaintiff did not receive was divested out

of her and vested in those to whom it was allowed, and that she is precluded by such division and the instrument she signed from recovering anything for such stock.

3. That the agreement or promise of plaintiff to accept one-fourth of her mother's interest in the property neither estops her nor binds her as a contract as to property not divided.

4. That she is entitled to all that remains undivided of her mother's property, and to one-third of Phillip Alston's estate under the provisions of his will.

(This statement accompanies the opinion.)

*Nunn & Denny, S. A. Miller,* and *Earle A. Adams,* for appellants.—1. "An agreement entered into upon a supposition of right, or of a doubtful right, though it often comes out that the right was on the other side, shall be binding; and the right shall not prevail against the agreement of the parties, for the right must always be on one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation for an agreement." Camoron v. Thurmond, 56 Texas, 34; Smith's Lead. Cases in Eq., 16, 75; French v. Shoemaker, 14 Wall., 314; Burnitt v. Payne, 5 Watts, 261; Snell's Princ. of Eq., p. 370; 1 Story's Eq. Jur., secs. 131–33; 3 Redf. on Wills, 320.

2. The court erred in failing to find the allotment of homestead and 150 acres of land to plaintiff was part execution of the agreement of division.

3. While the proof is not positive that the homestead and 150 acres of land were discussed and considered at the time of the general agreement as to settlement and partition, the fact that Mrs. Haden has continued to occupy the premises without dispute or question was sufficient to warrant, and in absence of other evidence to require, the conclusion that such possession and use allowed her resulted from the general agreement as to mode of settlement, and constituted a part of such agreement and settlement, and the court erred in holding to the contrary.

4. We respectfully submit that no sufficient reason exists to suppose the Legislature of the State of Texas intended a discrimination against grandchildren, with respect to community estates, which was carefully avoided by express legislative declaration with regard to every other estate, but on the contrary, that such intention being expressed in all other estates will, in the absence of declaration to the contrary, be inferred in this case. Cool. Const. Lim., pp. 66, 67; Sedg. Con. Stats. and Const. Law, pp. 212–14, and note p. 227; Acts Leg. Texas, 1887, p. 76.

5. "It is an ancient and well established rule, that where any cause of doubt attaches only to a particular clause, the whole statute is to be taken together and to be examined to arrive at the legislative intent," and if possible such a construction is to be made as will avoid any con-

tradiction or inconsistency.     Sedg. Con. Stat. and Const. Law, pp. 199, 200.

*Abercrombie & Randolph*, for appellee.—1.    Where a written document is resorted to by the parties for the expression of their conclusions after a series of conferences, such document will be regarded as expressing their final views, and as absorbing all other parol understandings, prior or contemporaneous; and the court below did not err in refusing to carry out a supposed parol agreement to partition the estate of Eliza Alston, as complained of in first error assigned.    Hunt v. White, 24 Texas, 643; 2 Whart. Ev., sec. 1014.

2.    The supposed contract or agreement on the part of appellee to give three-fourths of her mother's estate to the appellants was without consideration and void, and a deed so partitioning it would have conveyed no title.    Davis v. Agnew, 67 Texas, 206.

3.    Where there are minor heirs or legatees no valid partition can be had without action of the court, and any agreement to partition to be binding on one must be binding on all.

4.    The court below did not err in holding that on the death of Eliza Alston her half of the community descended to and vested in the daughter, the plaintiff, to the exclusion of her grandchildren.    Burgess v. Hargrove, 64 Texas, 110; Cartwright v. Moore, 66 Texas, 206.

5.    The court did not err in its construction of the will of Phillip Alston, nor in refusing to hold that appellee was estopped from asserting her rights as legatee under it, nor her claim as heir to her mother's estate. Edwards v. Dickson, 66 Texas, 613; Davis v. Agnew, 67 Texas, 55.

COLLARD, JUDGE.—Appellants' first assignment of error is as follows:

"The agreement among the heirs to divide the estate into four parts and to distribute it among the original heirs and their descendants, and the part execution of such agreement, was binding upon all such heirs, and the court erred in not so holding."

The court below came to the conclusion that the distribution of the estate of Eliza Alston was not made under the verbal agreement referred to in the assignment of error, and we concur in that conclusion.    After the "general verbal agreement," as it is called, was made, there was a written agreement among the parties to divide Mrs. Alston's community half of the cattle among the grandchildren and plaintiff under the statutes of inheritance; and the statement of facts shows that "defendants read in evidence a written agreement, of date September 24, 1879 (seven days subsequent to the agreement to divide the cattle), wherein they agree to a division of the community estate of Mrs. Alston under the laws of inheritance."    It is true that the division of the cattle and the

mules, as shown by the writing of September 24, 1879—all the partition that was ever made—was upon the basis of one-fourth to each set of heirs, or grandchildren, and one-fourth to Mrs. Haden. This was doubtless owing to the construction given by the parties at the time of the statute regulating the descent of Mrs. Alston's community estate. The division that was made was adopted by the parties by a written instrument to that effect. It is evident that the written instruments made subsequent to the parol agreement were made in lieu of it; that it was merged into the writings. 2 Whart. Ev., sec. 1014; 1 Greenl. Ev., sec. 275; Hunt v. White, 24 Texas, 643.

The division that was actually made of the personal property was held by the lower court to be binding upon Mrs. Haden, and there is no controversy upon that subject. The parties making the division supposed they were complying with the contract in allowing Mrs. Haden only one-fourth of the property. The law was generally so construed and acted on until the decision in the case of Burgess v. Hargrove, 64 Texas, 110, in 1885, when the Supreme Court for the first time construed the statute. Pasch. Dig., art. 4642. By that decision the surviving child or children was made to inherit all a deceased parent's half of the community estate, to the exclusion of grandchildren.

The division made shows that the parties construed the stipulation in their contracts, that Mrs. Haden was to take under the law of descent, to mean that she was to take one-fourth and each set of grandchildren one-fourth of Mrs. Alston's community estate. They supposed they were making such an agreement. It is also true, however, that it was not understood by the parties that Mrs. Haden was to surrender any part of her inheritance to the grandchildren; she was to take according to law. Upon the supposition that the grandchildren were entitled to share with her the estate under the law, an agreement was made to divide the estate according to law. The fact that the parties misconstrued the law and the terms of their contract would not bind Mrs. Haden to that construction, no consideration having been paid to her for such renunciation. If the parol contract had not been merged into the written agreement it would not be binding upon Mrs. Haden, because it was without consideration. It would have been nothing more than an agreement to divide her own property with others without consideration, upon the erroneous and mistaken assumption that such other persons were entitled to and owned an interest in it. Such an agreement can not be enforced. Davis v. Agnew, 67 Texas, 213.

When a right is doubtful, is controverted, or where the object is to avoid or settle litigation, a compromise duly executed will not be set aside by the courts, if the parties act in good faith and there is no fraud or misrepresentation. Camoron v. Thurmond, 56 Texas, 33–35.

In this case there was nothing to compromise, and no compromise was

made; nor does it appear that there was any controversy between the parties. It simply appears that in the partition made Mrs. Haden by a misconception of the law allowed the grandchildren three-fourths of her mother's community, when in fact under the law they were not entitled to any of it. The written contract between them stipulating for her full legal inheritance, the court below at least went as far in favor of the grandchildren as the law would permit in sustaining the partition made.

Appellants claim that Mrs. Haden is estopped. We see nothing in the nature of estoppel in the case. The reasoning of appellants would be, that because at one time Mrs. Haden donated to them three-fourths of her inheritance of personal property, she must now donate them three-fourths of the land. She is not bound to do so by contract or estoppel.

Appellants claim that in 1879, when descent of Mrs. Alston's community estate was cast, Mrs. Haden could only take one-fourth under the law. This point has been twice decided by the Supreme Court adversely to appellants. Burgess v. Hargrove, 64 Texas, 110; Cartwright v. Moore, 66 Texas, 55; Act of 1848, Pasch. Dig., art. 4642; Rev. Stats., art. 1653. We see no reason why those decisions should be overruled. The statute was amended in 1887 by act of the Legislature so as to allow descendants of children to inherit the shares of their deceased parents. Gen. Laws 1887, p. 76.

Finding no error in the judgment of the court below, we conclude it ought to be affirmed.

*Affirmed.*

Adopted January 20, 1890.