PEOPLE'S ICE CO. v. GLENN.   (No. 11986.)

Court of Civil Appeals of Texas.   Fort Worth.
June 16, 1928.

I. **Evidence** ⚖⟹471(17) — **Witness' statement she felt that automobile was responsible for collision was without probative force.**

Witness' statement that she felt that automobile was at fault and clearly responsible for collision with ice wagon was mere conclusion of no legal probative force.

2. **Compromise and settlement** ⚖⟹23(3)—**Evidence excluded held not sufficient to authorize conclusion there was no consideration for compromise agreement regarding damages to automobile sued on.**

In suit on compromise agreement to pay for repairs to automobile as result of collision with defendant's ice wagon, evidence excluded *held* not sufficiently definite and explicit to authorize conclusion that there was no consideration for agreement sued on.

3. **Compromise and settlement** ⚖⟹6(2)—**Compromise agreement to pay repairs on automobile damaged in collision held binding, where made in good faith and responsibility for collision was subject to controversy.**

Compromise settlement whereby defendant agreed to pay for repairs to plaintiff's automobile as result of collision with defendant's ice wagon *held* binding, where it was made in good faith and there was no concealment, mistake, or fraud, and question of responsibility for collision was subject to controversy.

4. **Principal and agent** ⚖⟹124(2)—**Authority of defendant's agent, agreeing to pay for repairs to plaintiff's automobile as result of collision with ice wagon, held for jury.**

In action on compromise agreement whereby defendant's assistant manager agreed to pay for repairs to plaintiff's automobile as result of collision with defendant's ice wagon, case *held* properly submitted to jury, as against contention that there was no proof that assistant

manager had authority to negotiate settlement and agreement.

**5. New trial ☞44(3)—In action for damages to automobile, new trial on ground that jurors discussed fact that insurance company was protecting defendant held properly denied (Rev. St. 1925, art. 2234).**

In action for damages to plaintiff's automobile sustained in collision with defendant's ice wagon, court properly overruled motion for new trial on ground of misconduct of jury in considering and discussing fact that public liability insurance company was protecting defendant in violation of court's instructions, under Rev. St. 1925, art. 2234, relating to new trial for misconduct of jury.

Appeal from Wichita County Court; C. M. McFarland, Judge.

Action instituted in a justice court by O. E. Glenn against the People's Ice Company. Judgment was rendered for plaintiff, and, on appeal to the county court, plaintiff recovered judgment, and defendant appeals. Affirmed.

Luther Hoffman and Irvin J. Vogel, both of Wichita Falls, for appellant.

Heyser & Hicks, of Wichita Falls, for appellee.

CONNER, C. J. The appellee, Glenn, instituted this suit in a justice court against the appellant, People's Ice Company, to recover the sum of $162.40. The plaintiff alleged that on or about August 10, 1926, one of his employees was driving one of his automobiles in a prudent manner, crossing the intersection of Ninth and Broad streets in the city of Wichita Falls, and that one of appellant's employees, driving an ice wagon for it in a careless and negligent manner and without observing traffic rules and regulations, ran into appellee's car, damaging it in the sum of $162.40. It was further alleged that, after a discussion of the nature of the accident, appellant, acting through T. C. Scott, one of its authorized agents, acknowledged that the accident was caused by the negligence of appellant's employee and it was agreed the matter should be settled by appellant paying the costs of repairing the automobile. There were further allegations to the effect that, acting upon said agreement, the automobile was repaired at a cost of $162.40, but that appellant refused to comply with said agreement by paying said account, which plaintiff was accordingly compelled to do, and the prayer was for the recovery of said costs of repairs.

The pleadings of defendant in the justice court do not appear in the justice's transcript, but the trial in that court resulted in a judgment in favor of plaintiff, and the appellant company appealed to the county court. In the pleadings in the county court the appellant defended the action by pleading a general denial, and specially, in substance,

that the accident was the result of the negligence of the plaintiff's driver in driving at a reckless and unlawful rate of speed on the wrong side of the street, and failing to give any warning of his approach, or to keep a proper lookout, and specially denied that any one clothed with authority from appellant admitted that its driver was negligent in the matter, or entered into any agreement to pay for the alleged damages. It was further pleaded specially by appellant that, in the event there was any such agreement as plaintiff declared upon, which was denied, the agreement was without consideration and void.

The trial court submitted the case to the jury upon the following special issues, which, together with the answers of the jury thereto, are as follows:

"(1) Did Mr. Scott agree upon behalf of the People's Ice Company to reimburse Mr. Glenn, the plaintiff, for the expenses incident to the repairing of said automobile? Answer: Yes. "(2) If you have answered special issue No. 1 in the negative, you need not answer the following issue, but, if you have answered in the affirmative, then, at the time said agreement was made, find from the evidence whether or not Mr. Scott had the authority to make such agreement. Answer: Yes."

Upon the verdict so rendered, the court entered its judgment in favor of plaintiff for the sum of $162.40, with interest thereon at the rate of 6 per cent. per annum from the date of the judgment, together with all costs, and the defendant company has appealed from the judgment so rendered.

By appellant's first proposition it is insisted that the court erred in excluding the following testimony of Mrs. O. E. Wilson, an eyewitness, to wit:

"I recall the occasion of an automobile accident at the corner of Ninth and Broad streets, in Wichita Falls, last August, between an automobile and an ice wagon of the People's Ice Company; I was in front of Yates' Cold Drink Stand with two other ladies, Mrs. Elliott and Mrs. Smith, sitting in a car getting a cold drink and was just across the street from the accident. It occurred at the street intersection. The wagon was over halfway across the street when the tongue of the wagon hit the car. The wagon was coming towards town on Ninth street, and I was facing the wagon. It turned to go north on Broad street. The wagon, at the time of the accident, was anyway halfway over the center line of Ninth street; the team was across the track when it was hit. The automobile was going out Ninth street in the direction from which the wagon came. I don't know how fast the car was running. The automobile swung around, but not enough to keep from hitting the team. I thought the horses were going to fall; it was such a lick. I do not know which was to blame, but feel that the automobile was. The horses were across the street car tracks when the accident happened; they were going north; the driver was sitting on the

front seat; the automobile was driving up close to the tracks; the wagon was already in the center of the street. The ice man could not have stopped in time to avoid the accident."

The testimony of another eyewitness, Jack Garrett, was as follows:

"I recall the occasion of a collision on Ninth street last August between a wagon of the People's Ice Company which I was driving and a car of O. E. Glenn. My helper and I were on the wagon. We were driving mules. I was making a left turn at the intersection of Ninth and Broad streets and was headed towards the north. The car was coming from town on Ninth street going west when the accident happened. The mules had already crossed the intersection of the street, going north, but the wagon was still over the street car tracks. When the car approached he slowed down, from all appearances, shoved the brakes on as hard as he could, swung to the north as hard as he could, then let the brakes out, and stepped on the gas. When I first noticed the car, it was far enough away that it was not noticeable. I did not say that the car skidded, but I heard the brakes. He appeared to be turning north as he approached the street intersection, then turned to the left and ran into the tongue of the wagon, splintering the tongue and almost knocked the mules down. I was on the driver's seat. The team had already passed over the street car tracks and the wagon was on the tracks when the accident happened. I was going very slowly and had stopped my team; the driver of the car appeared to be doing all he could to get around me without stopping. After he got out into the street and nearly up to the wagon, even with the wagon, he tried to get around, of course."

The testimony was offered for the purpose of showing that there was no consideration for the agreement declared upon and supported by the testimony of plaintiff. Of the cases cited by appellant in aid of its proposition the one most nearly in point is the case of Von Brandenstein v. Ebensberger, 71 Tex. 267, 9 S. W. 153. In that case the appellee instituted a suit in the justice court against the estate of Walz, deceased, of which the appellent was administrator. The suit was upon open account for $202. A writ of attachment was sued out and levied upon the furniture and household goods belonging to the Walz estate. In consideration that appellee would forbear to further prosecute his suit and release the furniture and goods from the custody of the officer under the writ of attachment, the appellant executed and delivered to the appellee a written obligation to pay the bill of $202 upon which the suit was instituted in the justice court. The goods and furniture were released and delivered to the administrator and the suit in the justice court was discontinued by appellee. Later suit was brought by appellee Evensberger upon the written agreement of the administrator. In disposing of the contention that the written agreement declared upon was

8 S.W.(2d)—47

without consideration, our Supreme Court said:

"There can be no doubt that an agreement to forbear to prosecute a suit to enforce a well-founded claim in law or equity is a sufficient consideration to support the promissory note of the debtor, or of a third person, where the creditor has, in pursuance of such agreement, actually forborne. 1 Parsons on Contracts, 462 et seq.; 1 Chitty on Contracts, 36 et seq.

"But, in order to give such agreement the effect stated it must be made in respect of a well-founded claim, and there must also be some person liable to suit therefor. Authorities, supra. It appears from the allegations of the petition that the suit that appellee was to forbear to prosecute was brought in a court that did not have jurisdiction of the amount sued for; it was upon a claim that did not appear to have been rejected by the administrator. It is evident from the allegations of the petition that the attachment sued out was levied upon property that was exempt under the laws of this state, and no fact or circumstance is alleged which would relieve the property from the protection of the exemption laws. No suit can be maintained on a claim against an intestate estate until after the claim has been properly sworn to and presented to the administrator and by him rejected. It is clear to us, from the allegations of the petition, that appellee had no such claim, or suit pending, as his forbearance to prosecute would constitute sufficient consideration to support the note sued on, and we think the demurrer should have been sustained."

It thus appears that the petition in that case affirmatively shows that the suit in the justice court was without a legal standing, in that it had been instituted in a court without jurisdiction, and, furthermore, that the writ of attachment sued out in the justice court had been levied upon exempt property. Hence it follows that the appellee in that case, who sought to enforce the written contract, only did, in dismissing his case, what, by a proper enforcement of the law, he would have been compelled to do. In other words, under that state of facts our Supreme Court held that the agreement followed by a release of the attachment and a dismissal of the suit in the justice court did not constitute a consideration for the administrator's written promise. We find no fault with the conclusion reached by our Supreme Court in the case cited.

But we do not think the evidence of the witnesses Wilson and Garrett, which the appellant in this case sought to introduce, affirmatively shows that there was no consideration for the promise of appellant's agent to settle the bill for the repair of appellee's automobile. We think the rule stated in the case of Camoron v. Thurmond, 56 Tex. 22, is more clearly applicable to the case we now have before us. It is there said that:

" 'An agreement entered into upon a supposition of right or of a doubtful right, though it often comes out that the right was on the other side, shall be binding, and the right shall not

prevail against the agreement of the parties, for the right must always be on one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation of an agreement.' Leading Cases in Eq. 1675. And again it is said: 'It is clear that when parties enter into a compromise or family arrangement in order to avoid litigation, the question as to whether one of the parties is entitled to certain property or not, such compromise will not be set aside, although it should eventually turn out that the party taking something under the compromise was in reality legally entitled to nothing.'

"But the parties in making such agreement must act in perfect good faith, without concealment, misrepresentation of facts, or fraud.

" 'A deliberate settlement of a controverted right will not be set aside except for those cases which, like fraud, mistake, or undue influence, invalidate all contracts; and it is not, therefore, sufficient ground for opening and rescinding such an agreement that it is harsh or unequal in its operation.' French v. Shoemaker, 14 Wall. 314 [20 L. Ed. 852]; Bennet v. Paine, 5 Watts [Pa.] 261."

[1] We do not think it affirmatively appears from the testimony of Mrs. Wilson that the driver of appellee's automobile was clearly at fault and clearly responsible for the collision. She stated that the tongue of the wagon hit the car. If the wagon was going north and the car was going west, evidently the wagon must have been moving in the direction of the car. It does not appear that the animals hitched to the wagon were hit, and the witness herself said she did not know which was to blame. True she stated that she felt that the automobile was, but that was but a mere conclusion of no legal probative force. Nor do we think the evidence of the witness Garrett is conclusive, especially when viewed in the light of the testimony of the plaintiff, to the effect that after the accident he called up appellant's office for the manager and that the call was answered by T. C. Scott, who came to appellee's place of business and the matter was discussed in the presence of the driver of the automobile, who, at the time of the trial, was apparently not within the reach of the court's processes. T. C. Scott himself testified:

That he was assistant manager of appellant's ice company, and that the plaintiff called him to his place of business "for the purpose of discussing settlement of the damage to his automobile"; that he went there to investigate and not to settle the account; that when he went to see Glenn and told him "if it was our fault we certainly would see he was reimbursed for his expenditures on his automobile, * * * I told him I would need the estimate showing the amount of the damage for the company files, and I told him specifically that this was not an order for repairs on the car. I did not tell Mr. Glenn or any one else if he would not sue the company we would pay the repair bill, but I did say that, if it turned out that the accident was due to the fault of the company, we would pay the damage. I was then and still am the assistant manager of the defendant company, and I then had authority to settle claims up to $25, and larger claims were then referred to the general manager, Arthur C. Rayzor, to whom this matter was referred."

The plaintiff, Glenn, testified to the effect that he called the People's Ice Company after the accident and asked for the manager and Scot answered the telephone; that Scott said "he would see about the accident and take it up with his driver as soon as he came in"; that he again called up and Scott said that he had seen his driver; that Scott then came to his place of business and told him to take the car somewhere and get an estimate. The plaintiff further testified that he did not want to go to court about the accident and agreed not to go to court if a settlement could be had without it, and that Scott said:

"All right then; they could do that. Scott then agreed to pay this bill, for the actual repair of the automobile, for the damage that was done by the wreck at the particular time, if suit would not be filed for the damage to the car and the loss of the use of it. I accepted this agreement. Jesse Bird, Wallace Warfield, Bill Barnett, and three or four other fellows, whose names I cannot recall, were present."

On cross-examination, plaintiff further testified, among other things, that:

Scott said that he had seen his driver and the "best he could find out he was to blame for the accident. Scott then told me to go ahead and repair it and he did not ask for an estimate. * * * This took place on Scott's second trip to my place of business."

The witness Bird testified that he was present when Scott came to Glenn's garage to discuss the accident with him and Wallace Warfield and Bill Barnett were also present; that Bill Barnett was the driver of Glenn's car at the time of the accident; that Barnett is now in San Antonio, or the West Indies; that Mr. Scott asked about the car and said his driver was in the wrong, and they talked about getting the car fixed; and that he wanted Glenn to find out the cost of the repairs and he would pay for the same.

W. R. Warfield testified that he was at Glenn's garage and heard a conversation between Mr. Glenn and Mr. Scott about some damage to Mr. Glenn's car; that Mr. Glenn told Mr. Scott to get an estimate on the car to see what the damage would be, and he would find out if his driver was in the wrong and find out the estimate; that this was the first time that Mr. Scott came up that this conversation took place. He further testified that he was also present on the next day when Mr. Scott came up, and heard the second conversation between Mr. Scott and Mr. Glenn; that Glenn told Scott the estimate; the exact figures he did not remember; and Scott said:

"Go ahead and have the car fixed up, and I will pay the bill; have the car repaired."

Hector W. Brown testified, among other things:

That he was at the time in question manager of the motor company which repaired the car. That Mr. Glenn brought a Marmon touring car to the garage to be repaired while he was acting as manager. That the damage was estimated to be in the vicinity of $150. That "Glenn told me to telephone Mr. Scott of the People's Ice Company for confirmation of Glenn's statement that the repairs were to be paid for by the People's Ice Company. I called on the phone for Mr. Scott, and a man who stated that he was Mr. Scott of the People's Ice Company answered that he was familiar with the transaction, and that the People's Ice Company was responsible for the damages, and asked for an estimate of the damage. I advised him that the estimate was approximately $150. I informed O. E. Glenn of Mr. Scott's statement to me and that Mr. Scott's statement to me confirmed what Mr. Glenn told me Mr. Scott had agreed to do. * * * On the strength of Scott's statement to me over the phone, I told O. E. Glenn that the car could be repaired and the cost paid for by the People's Ice Company. In repairing the car, I looked strictly to Glenn for payment."

[2] We conclude that, in the light of the evidence as a whole, the testimony of the witnesses Wilson and Garrett, which appellant sought to introduce, is not sufficiently definite and explicit to authorize the conclusion that there was no consideration for the agreement upon which the appellee in this case declared. In the case of O'Fiel v. Janes (Tex. Civ. App.) 269 S. W. 1074, it is said on page 1082:

"In passing upon the effect of compromise settlements, no investigation into the character or value of respective claims will be made; it being sufficient that the parties thought there was a question between them. Little v. Allen, 56 Tex. 139. When a right is doubtful, or is controverted, or where the object is to avoid or settle litigation, a compromise duly executed will not be set aside by the courts if the parties acted in good faith, and there is no fraud or misrepresentation. Pegues v. Haden, 76 Tex. 99, 13 S. W. 171; Bartlett Oil Mill Co. v. Cappes, 54 Tex. Civ. App. 354, 117 S. W. 485. As was said in Camoron v. Thurmond, 56 Tex. 34:

"'A supposition of right or of a doubtful right, though it often comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties, for the right must always be on one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation of an agreement.'

"When parties have confidence enough in their claims to stand for and litigate them, a mutual agreement for the compromise is in itself a valuable consideration. Little v. Allen, 56 Tex. 138. Judge Stayton, in Gilliam v. Alford, 69 Tex. 271, 6 S. W. 759 (quoting from Pomeroy's Equity [3d Ed.] § 850), says:

"'The rule in such cases is that voluntary settlements are so favored that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge or means of obtaining knowledge concerning the circumstances involving those rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they have voluntarily entered must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for decision.'

"Judge Willson, in Fontaine v. Davis & Powell (Tex. Civ. App.) 164 S. W. 386–390, says: 'It is well settled that, "in order to render valid the compromise of a claim, it is not essential that the matter should be really in doubt. It is sufficient if the parties consider it so far doubtful as to make it the subject of a compromise."'"

[3] In the light of the rules so stated and of the evidence, we think it is to be scarcely doubted that there was any want of good faith, or any concealment, mistake, or fraud on the part of the parties acting in making the compromise agreement declared upon by the plaintiff in this case, and if by any processes of reasoning, as already indicated, the offered testimony would support a finding that the appellee's driver was the one at fault, yet the matter was at least so subject to controversy and of such doubtful character as to bring the agreement well within the rules announced upholding such settlements. We accordingly overrule appellant's first proposition.

A further contention was that the testimony offered and above discussed should have been admitted for the purpose of corroborating Scott, who denied making the agreement, but we also overrule this contention in the light of the record as above indicated.

[4] Appellant's second proposition is that the court erred in overruling appellant's motion for a peremptory instruction to the jury in its favor, "because under all of the proof it appears that the alleged agreement on the part of the assistant manager, T. C. Scott, was without authority, there being no evidence that said T. C. Scott was clothed with authority to negotiate the settlement and agreement pleaded by appellee."

We think that the evidence we have detailed under the rule laid down in the case of Joske v. Irvine, 91 Tex. 575, 44 S. W. 1059, and other cases following it, sufficiently show that the court committed no error in refusing the peremptory instruction, for certainly the evidence tending to show Scott's authority amounts to much more than a surmise or suspicion. The evidence shows that he was called upon and that he answered as the general manager of appellant company; that he more than once reiterated the statement that his company was at fault and he would see

that the bill was paid. True he did testify that he told the plaintiff his authority was to settle claims up to $25, but there is no evidence that what he did and what he said was without knowledge on the part of his superiors, if any, or that they had repudiated and disaffirmed his acts and declarations at or about the time they were made. In this connection it is proper to note that the jury found that Scott did have authority, and we find no objection in behalf of appellant to the submission of the issue, nor the answer thereto questioned in any other manner than by the requested peremptory instruction. Appellant's second proposition will accordingly be overruled.

[5] The case presents but one further question and that is by appellant's third proposition. It is insisted that during the course of the trial some of the witnesses mentioned the fact that a public liability insurance company was protecting appellant, and that in violation of the court's instructions to the jury not to consider such fact, some of the jurors did in fact consider it and discussed the fact while considering their verdict, and that hence the court abused its discretion in not granting a new trial on this ground. The testimony relating to this question as given by juror Williams, called by appellant during the presentation of appellant's motion for a new trial, is as follows:

"I was the foreman of the jury in this case. While the jury was out deliberating and before it had returned its findings, there was some mention of an insurance company in the case. I do not remember just how it came about or who brought it up, but before we had taken our first ballot there was some mention—I do not remember who it was—of the accident; just made the remark that, if we had more definite information about this accident, who was at fault, it might help us some, and some one mentioned the insurance proposition, and I do not remember, I think I spoke up and said that would have helped us, but we were not to consider that in this case. There was mention of an insurance company by one of the jurors; there was an explanation made in regard to how public liability companies usually handled cases of that kind; the insurance company usually investigated to see who was in the right and wrong before they made an adjustment of it, and that was about all was said. This was after the remark had been made that, if more about the insurance company were known, they (the jury) could tell; that was about all the insurance end of it as I remember. Well, I do believe it was before I had told them that (the insurance matter) was not to be considered at all. This was before we had taken the first ballot. After that, but not immediately, we took the first ballot. Mention of the insurance company had nothing to do with my verdict in the matter. I think I would have arrived at the same verdict if there had been nothing said about it at all. Pursuant to the court's instruction that we were not to consider the fact that the insurance company carried the People's Ice

Company in arriving at my verdict, I did not consider that. I followed the court's instructions in the matter as nearly as I could. I think I would have returned the same verdict against the People's Ice Company if nothing had been said about insurance. It had no bearing on my finding for the plaintiff. I did not hear the other jurors say they considered it. As foreman I told them not to consider it. From the discussion of the jury there I do not remember who it was mentioned it, but something was mentioned about this insurance proposition. Some one brought up the conversation about how they usually handle same. I testified that none of the jurors was influenced by this fact in arriving at their verdict; I did not ask them when they turned in their ballots. None of them indicated to me that they were influenced by it. I was not influenced by it."

B. B. Craft, juror, called by appellee, testified as follows:

"I was a juror in this case. I heard Mr. Williams testify that there was something said about liability insurance being carried by the People's Ice Company to protect them against loss where they were at fault in an accident. I made a statement about how they handled those matters after that discussion came up. When this came up, Mr. Williams told the jurors that they were not to consider that in arriving at their verdicts. At the time it was mentioned and I told them that, I do not think it was discussed by any of the jurymen after that time in arriving at our findings when we did get together on it. It had nothing to do with my arriving at my verdict. I would have returned the same verdict if nothing had been said about insurance. I arrived at my verdict by the testimony of the witnesses on the stand and which was not excluded by the court. I did not consider the fact that one or two of the witnesses mentioned the insurance during the trial of the case here. My verdict was made up solely from what the court had admitted as evidence. I think the insurance question was mentioned in the discussion of the proposition of Mr. Scott's having authority to act; some one must have authority to act for the People's Ice Company, and that was mentioned at that time, I think. Some one said, well, they had insurance and the insurance adjuster was the man to act in that case, and, of course, Mr. Williams and all agreed while it was mentioned that we were not to take that into consideration because we had been instructed by the court not to do so. I know, as a matter of fact, carrying liability insurance, if a judgment were rendered in this case, the liability company would pay off, instead of the ice company. I knew that when I sat as a juror. I did not know that this company was carrying public liability insurance; only just what I heard here. I knew from my experience, if the insured was at fault under the property damage item, that the insurance company always paid off; if the insured was not at fault, as a rule they did not. I did not go into detail; I did tell the jurors how such insurance works. I am not certain I made the statement if the ice company had a public liability policy, the insurance company would pay off and not the ice company. I think I made the statement it was the adjuster's business to find out who was at fault, and the insurance ad-

juster in the case of insurance involved—there was not much about that—we all agreed that was not to be considered in the case. I think all of the jurors said we were not to consider that. I did not consider it. I would have found against the People's Ice Company if nothing had been said about it."

Article 2234, Rev. Civ. Statutes 1925, reads as follows:

"Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material."

In the case of Bradley v. T. & P. Ry. Co., 1 S. W. (2d) 861, it is held among other things, to the effect, in an opinion by Judge Leddy, of section B of our Commission of Appeals, that the trial court, in passing on evidence heard on a motion for new trial, has the same latitude in passing on the evidence offered and the weight to be given to the testimony as a jury has on original trial, and that on motion for new trial, where the only evidence of misconduct was that a juror mentioned attorney's fees, and the jury was immediately admonished by another juror that under the court's charge it was improper to consider attorney's fees, and there was no evidence that the verdict was affected by such misconduct, a denial of a new trial was held not abusive of the trial court's discretion.

In the light of the rules so announced, we are unable to say that the trial court abused his discretion in overruling appellant's motion for new trial on the ground of misconduct of the jury. No other question being presented, we conclude that all propositions should be overruled and the judgment affirmed.