## HYDE v. HYDE et al.
### No. 4532.

Court of Civil Appeals of Texas. Beaumont.
June 3, 1948.

J. R. McDougald and Lefler, Walker & Walley, all of Beaumont, for appellant.

J. E. Wheat and Grover C. Lowe, both of Woodville, for appellees.

WALKER, Justice.

This appeal was taken from a preliminary decree of partition rendered in a suit brought for the partition of certain lands in the town of Woodville, in Tyler County, which had been a part of the community estate of T. E. Hyde and wife, N. L. Hyde. Mr. and Mrs. Hyde were dead at the time this suit was brought.

The interested parties are the four children of Mr. and Mrs. Hyde, namely, appellees T. M. Hyde and his sister, Mrs. Dora C. Lee, wife of K. W. Lee, and their brothers, E. G. Hyde and the appellant Amos P. Hyde.

Appellees T. M. Hyde and his sister, joined by her husband brought this suit against their two brothers, E. G. Hyde and the appellant Amos P. Hyde, and against E. G. Hyde's wife and a Mr. and Mrs. Lester W. Hewitt as well, praying partition of a large and irregularly shaped tract containing about 28 acres of land. Their original petition was filed on October 18, 1946.

E. G. Hyde answered that he had conveyed all of his interest in this tract to appellant by a deed bearing date about three years before this suit was filed, subject, however, to a reservation in his behalf of one half of his undivided interest in the minerals in and under this tract, and he alleged title to this undivided mineral interest which he declared to be a $\frac{1}{8}$th of the minerals in the whole tract. His wife and Mr. and Mrs. Hewitt disclaimed.

Appellant filed an answer and also filed a cross action for partition, bringing into the scope of the partition two other small tracts of land. Other pleadings were filed by appellant and. by appellees, but such parts thereof as are relevant are referred to below.

The cause was tried to a jury, to whom the trial court submitted only one special issue. This issue, and the jury's answer thereto, are also set out below.

The three tracts referred to in the pleadings are also referred to and covered by the partition decree. Together, these three tracts would form a solid tract of land, and probably once did so. The common north boundary of these three tracts is the public highway. The easternmost tract, which we shall call the first tract, is rectangular in form and covers about $\frac{1}{2}$ an acre. Adjoining it on the west and south is the second tract, which is El shaped and is perhaps twice as large as the first. The third tract is the 28 acre tract; it adjoins the second tract on the west and extends a considerable distance beyond it to the south. The partition decree finds that the first tract belonged to the appellee Dora C. Lee under a conveyance to her from her father and brothers. The decree set aside the second tract to Mrs. Lee but found that her brothers owned undivided interests in this tract and directed that they be compensated out of their sister's undivided in-

terest in the 28 acre tract for the loss of their interests in this tract. These provisions are not attacked and we refer to them only as being explanatory of the litigation.

The occasion of this appeal is the trial court's adjudication concerning a strip running across the north end of the 28 acre tract and adjoining the highway. This strip is 316 feet wide from east to west, and is 240 feet deep from north to south. It is the most valuable part of the 28 acre tract. The trial court's decree, in effect, divides this strip into four lots, numbered from 1 to 4 from east to west, each lot fronting 79 feet on the highway. These lots, under appellees' theory of the facts, which the trial court adopted, were of equal size running back 240 feet to the south line of the strip, but through error, doubtless inadvertent, the tract which constitutes Lot 1 is described in the partition decree as being 220 feet long, instead of 240 feet. The effect of the error is to cloud the title of the present owners of Lot 1, who were not parties to the suit, to the south 20 feet of their lot.

Concerning this 316' x 240' strip, appellees first alleged that Lot 1 had been conveyed to appellant on July 19, 1937, by his father, sister and brothers, apparently as an advancement out of the community estates of his father and mother and for no other consideration, and that this advancement should be charged against appellant's undivided interest in the balance of the 28 acre tract. By trial amendment, appellees set up a different theory, namely, a partition agreement dividing this strip as the trial court has divided it. Whether the parties regarded this agreement, at the time it was made, as executed in fact or as executory is not entirely clear from the allegations. Appellees alleged that Lot 1 had been conveyed to appellant by his father by a deed dated February 22, 1937 (some five months earlier than the deed of July 19th first alleged), that this conveyance was only an advancement to appellant by his father (we infer the pleader's intention to say that this advancement was from the community and not the father's share), that later, but before July 19, 1937, the four children and Dora's husband "had agreed upon a partition of said portion of said estate, being the most valuable portion thereof, under the terms of which said portion was cut up into 4 lots, one for each of the four children of the said T. E. Hyde and that it was understood and agreed by and between them that Lot No. One—should be awarded to—Amos P. Hyde; that Lot No. Two should be awarded to Edgar Hyde; that Lot No. Three should be awarded to T. M. Hyde and Lot No. Four —to Mrs. Dora Lee. That a deed was made, executed and delivered by all of the other parties to the said Amos P. Hyde on July 19, 1937, that said deed was made for the purpose of carrying into effect the previous agreement of said parties with reference to a partition of said property and for the consideration that all of the other parties should thereafter make, execute and deliver deeds to the respective parties for their tracts of land." They alleged further that appellant later acquired the interest of E. G. Hyde and thus had acquired Lot 2. In the alternative, they alleged that "in the event said partition agreement was not consummated" then appellant had "sold Lot 1 and has erected improvements upon Lot 2, and has appropriated it", that his interest ought to be charged with these lots, and that, to effect an equitable distribution, appellees ought to have lots 3 and 4.

In response to this amendment, appellant plead the 2 and 4 years statutes of limitations, and laches.

Under these pleadings, the trial court excepted Lot 1 from the partition, finding that it had been "heretofore conveyed by T. E. Hyde, T. M. Hyde, and Mrs. Dora C. Lee and E. G. Hyde to Amos P. Hyde." The conveyances on which this finding was based are discussed below. Regarding that part of the 316' x 220' strip which was covered by Lots 2, 3 and 4, the trial court found that it had "been subdivided into Lots 2, 3 and 4 and partitioned by agreement, it is ordered that Lot 4 be awarded to Dora Lee, Lot 3 to T. M. Hyde, and Lot 2 to Amos P. Hyde." Doubtless this finding was based in part on the verdict of the jury but on our construction of the proof it represents at least in part an independent fact finding.

We have referred to the fact that the land involved was once community property of T. E. Hyde and wife, N. L. Hyde. The proof does not show who held the legal title to this estate. Both Mr. and Mrs. Hyde died intestate. Mrs. Hyde died on April 26, 1918. Her husband died on September 22, 1941. The entire interest of Mrs. Hyde vested in her four children under the statutes of descent and distribution, and so did the interest of T. E. Hyde except to the extent that his conveyances, after his wife's death, vested parts of it in specific tracts in his children Amos P. Hyde and Mrs. Dora C. Lee. Only the deeds to appellant are relevant here.

There is evidence from appellee T. M. Hyde that a few days before February 22, 1937, he went upon the ground, in company with his father, his sister's son, and appellant's son-in-law, and surveyed out the four lots into which the trial court has divided the 316′ x 220′ strip in controversy. What caused him to make this survey, and his purpose in making the survey were not proved. The circumstances indicate that some sort of a division may have been in the minds of one or more of these parties, but nothing more definite than this can be inferred. He says that later, at a time not proved, he made the map of the land in partition, which appellees introduced as their Exhibit No. 1, and which he says shows his survey of the four lots. It affirmatively appears, however, that he erred in delineating his field notes upon this map because he made the four lots 220 feet deep when it was appellees' theory that the lots were 240 feet deep. The evidence affords no explanation for this variance between map and testimony. It does not appear that the lots were given numbers at this time. The numbers assigned the lots by the trial court may have been assigned at the time of the agreement of division referred to below or may have been assigned when the map was made.

However, T. M. Hyde gave the field notes of Lot 1 to his father, (in which this tract is described as 240 feet) and on February 22, 1937, his father conveyed this lot by these field notes (describing it by metes and bounds and not as Lot 1) to the appellant. This deed contains a general warran-

ty clause and recites a consideration of $10 and "other valuable consideration—to me in hand paid" by grantor. This recital of consideration was not contradicted by any evidence. Appellee's allegations that the deed represented an advancement were not proved. When this deed was made, several years after Mrs. Hyde's death, T. E. Hyde owned an undivided ½ of that part of the 28 acre tract covered by Lot 1, and appellant owned an undivided ⅛th thereof. Thus, according to the face of the deed— and we have nothing else to go by—this deed was a conveyance of a specific tract out of the commonly owned land by one co-tenant to another co-tenant for a valuable consideration, a bargain and sale. There is nothing in the record which would authorize us to treat it as an advancement to grantee out of the community (see Sparks v. Spence, 40 Tex. 693), or out of the grantor's interest in the 28 acre tract, or as a gift (see Rutherford v. Denver, Tex.Com.App., 235 S.W. 853; Brown v. Elmendorf, 87 Tex. 56, 26 S.W. 1043) or as a partition.

By deed of the same date, to-wit, February 22, 1937, appellant conveyed this tract now known as Lot 1, to his daughter and her husband. Appellant did not refer to the land as Lot 1.

The father never conveyed any of the other three lots.

However, by a deed bearing date July 19, 1937, the father, appellant's two brothers, and appellant's sister, joined by her husband, again conveyed (by metes and bounds) the tract which is now known as Lot 1 (but not referring to it as such) to appellant. This deed contains a general warranty clause and recites a consideration of $10 and "other good and valuable consideration, all cash, in hand paid" by grantee. It appears that E. G. Hyde did not execute this deed until on or about April 10, 1939, the date of his acknowledgment thereto, and this date is also the date of another deed by himself and his wife to Mrs. Vivian Hewitt conveying her his interest (vested and by expectancy) in the 28 acre tract and in other lands. However, this coincidence in date of execution of these two instruments is of no significance here since E. G.

Hyde's interest was later acquired by appellant. Mrs. Hewitt and her husband reconveyed to E. G. Hyde and the said E. G. Hyde, by deed dated October 16, 1943, conveyed his interest to appellant, reserving ½ of his minerals as he alleged.

We think it proven as a matter of law that this deed of July 19, 1937, was procured (at whose instance is not shown with certainty) to perfect the title of appellant's daughter and son-in-law to Lot 1 under their deed from appellant and appellant's deed from his father. However, the parties disagree regarding the consideration. Appellees adduced proof that no money was paid to them as consideration for this deed, and that the true consideration for their joining in the deed was an agreement between the four Hyde children, including appellant, for the division of the 316' x 240' strip. All of their proof comes from T. M. Hyde and his brother-in-law, K. W. Lee. According to these witnesses, this agreement was made after the execution and delivery of the deed of February 22, 1937, to appellant from his father. The testimony of K. W. Lee, though somewhat confusing, is at least consistent with that of T. M. Hyde, and Mr. Hyde testified: "Q. With reference to the deed dated February 22nd, when did you have whatever discussion you had with Amos and Edgar and Mrs. Lee, about which lot each should take? A. Sometime in the summer of 1937. Q. When did you do the work? (The reference is to the survey by Mr. Hyde, referred to above) A. Prior to the 22nd of February, 1937." This testimony accords with appellees' pleadings hereinbefore quoted.

The parties to this agreement were the four Hyde children; each child was to have a lot, namely, appellant was to have No. 1, E. G. Hyde No. 2, T. M. Hyde No. 3, and Dora C. Lee No. 4; and the parties were to execute and deliver deeds of conveyance to the various lots. There is a good deal of testimony from T. M. Hyde and K. W. Lee regarding the terms of this agreement and the connection between the agreement and the deed of July 19, 1937, but the following quotations are sufficient to illustrate their theory of the facts. T. M. Hyde testified: "The consideration for signing that instrument (referring to the July 19th deed) was they were all to sign an instrument conveying my (me) lot No. 3, to Edgar Lot No. 2, to Amos Lot No. 1, and to my sister, Mrs. Lee, Lot No. 4." K. W. Lee testified: "We were all to get another lot; we were all to have a lot apiece, is why we signed the deed—me, my wife and Tom and Edgar, to Amos. Q. That is your testimony with respect to this deed—the lawyer would not take the first deed and you had to get this curative deed? A. Yes, my understanding was we were to get a lot by signing that deed". And further: "Yes, when we signed that deed, it was understood we would all get a lot. Q. It was understood between you and Judge Smith? (who procured the signatures of witness and T. M. Hyde) A. Mr. Hyde and the whole bunch; we all talked about it. Q. Was Amos Hyde present there at that time? A. Yes; we were going to give him his lot."

All of the appellees testified that appellant repudiated this agreement and they learned of this repudiation not long after the execution of the July 19, 1937, deed by all of the parties thereto except E. G. Hyde. They certainly had notice of this repudiation prior to April 10, 1939, the date of E. G. Hyde's acknowledgment of his signature to the deed. Regarding E. G. Hyde, T. M. Hyde testified: "Q. And when did you first hear any objections from Mr. Amos Hyde with reference to that division that you had made there? A. It was shortly after we executed the deed to him; and Brother Edgar would not sign; his is the last signature, July 19th—my Brother's signature; it was before Edgar signed the deed—between the time I signed it and my sister signed, and the time Edgar signed it." And further: "Q. Did you talk to any of the other folks about signing the deed? did you write any letters of any instrument, or if the other people did it? A. I wrote a letter to brother Edgar to get him to sign it. Q. Was he the last one to sign the deed? A. He was. Q. It has been introduced; he acknowledged it the 10th day of April, 1939, and the first one that acknowledged it was on the 19th of July, 1937, about two

years before Edgar Hyde signed it? A. It was a long time; I don't know how long." The terms of his communication to E. G. Hyde were not proven. This testimony creates a hiatus in appellees' proof, for if E. G. Hyde did not execute the July 19, 1937, deed until after appellant had repudiated the agreement, appellant's promise would not have been the consideration upon which he finally joined in the July 19th deed. However this matter is immaterial under our disposition of the points of error before us.

Appellant denies that he made this agreement, but the jury found, in response to the only issue submitted to them that "Amos P. Hyde agreed with T. M. Hyde, Dora C. Lee and husband, K. W. Lee, and E. G. Hyde, prior to April 10, 1939, that Amos P. Hyde would convey his undivided interest in Lots Two—Three—and Four— to E. G. Hyde, T. M. Hyde and Dora C. Lee, respectively, in consideration for their conveyance to him of their respective undivided interests in Lot One—."

There is no evidence that T. M. Hyde or Dora C. Lee ever exercised any acts of dominion over Lots 3 and 4, which they claimed on trial under this agreement. After procuring the conveyance in 1943 from his brother E. G. Hyde (after the father's death in 1941), referred to above, appellant took possession of Lot 2 and of about ½ perhaps more, of Lot 3, enclosed with a fence the land thus appropriated, and erected a home and other improvements within his enclosure. The residence seems to be on Lot 2; location of the other improvements with reference to the lines of Lots 2 and 3 is not clearly shown. Appellant in effect denied that his appropriation was to be construed as a ratification of the subdivision appellees claimed. He said that he settled where he did because he wished to be near his daughter, who resided upon Lot 1.

Each of the four lots upon the 316' x 240' strip is of the same size, shape and value (we disregard the evident error in the description of Lot 1 in the partition decree). Upon a consideration of all of the various circumstances, it appears that these lots were regarded by the interested parties as equal in value when surveyed in February, 1937, by T. M. Hyde and on the dates of the deeds of February 22, 1937 and July 19, 1937.

Under Points 1 and 2, appellant says the trial court should have granted his motion for instructed verdict, that the agreement shown by appellees' proof was executory, was not performed but was repudiated by appellant under appellees' theory of the facts, and was therefore barred by the statutes of limitation. Point 6 reads: "The trial court erred in entering its partition decree in accordance with the motion for judgment on the verdict of the jury filed by appellees for the reason that said decree of partition denies appellant compensation for his undivided interest in Lots Three and Four."

Appellees say that the agreement represents an executed partition, and that it was valid, although it extended to the expectancies which the four children had of inheriting their father's interest.

We sustain appellant's contention that the agreement which the appellees' proof shows was executory and was barred by the statutes of limitation. Appellant's argument under Point 6 raises the issue that this agreement was not one for partition at all, but was, instead, one for the conveyance of an interest in land, namely, appellant's expectancy of inheriting his father's interest in Lots 2, 3 and 4, and on such proof as is before us we hold that this agreement must be so construed, namely, as one for conveyance, not one for partition. It results that that provision of the agreement, requiring the parties to execute and deliver mutual deeds of conveyance, was a material one and that the agreement was in fact executory as it was, in form (as testified to by T. M. Hyde and K. W. Lee) and that it was not executed.

The proof, as stated, shows that all four lots were of the same value. The deed of February 22, 1937, treated as a conveyance of a specific tract by one co-tenant to another co-tenant, for a valuable consideration, vested appellant, the grantee, with the father's ½ interest in this lot and with an equity to have this specific tract set aside to him, out of his father's interest in the

larger tract of which this was a part, upon partition of the larger tract, if that could be done without injury to his brothers and sister. Thomas v. Southwestern Settlement & Dev. Co., 132 Tex. 413, 123 S.W.2d 290. Thus appellant's brothers and sister had no expectancy in Lot No. 1. They had title to an undivided ⅜ths thereof by inheritance from ·their mother, but their· father had conveyed his interest and defeated their expectancy in Lot 1 under ·him. Appellant, however, not only owned, by inheritance from his mother, an undivided ⅛th interest in Lots 2, 3 and 4, which was precisely equivalent in acreage and in value to the ⅜ths interest his brothers and sister had in Lot 1; he also owned an expectancy of inheriting from his father another undivided ⅛th interest in these lots and as noted, this expectancy was not defeated by any conveyance from his father. His interest in Lots 2, 3 and 4 was therefore double, in acreage and in value, that which his brothers and sister had in Lot 1, and specific performance of the agreement to which appellees testified would vest in appellees out of the disputed strip just twice as much as appellant would have received thereunder.

Such a transaction is not a partition; it is a contract to convey. It was said in Cleveland v. Milner, 141 Tex. 120, 170 S.W.2d 472, at page 475: "Partition does not confer title; it effects the localization of undivided interests." And shares are determined by value, though on the proof here, value and acreage coincide. Acting on this view, the Supreme Court held in Zanderson v. Sullivan, 91 Tex. 499, 44 S.W. 484, that an agreement to divide a city lot, owned in equal undivided interests by two persons, into two parts equal in size but unequal in value, the co-tenant taking the more valuable tract to pay a certain sum therefor, was not a contract for a partition but was, instead, one for a conveyance of an interest in the land, to-wit, the excess in value of the one part over the other part. And see: Pegues v. Haden, 76 Tex. 94, 13 S.W. 171; Arnold v. Cauble, 49 Tex. 527. These decisions are in point here.

Our construction of the proof of the agreement accords literally with the terms of the special issue put to the jury, which calls on them to determine whether appellant agreed to "convey" his undivided interest in Lots 2, 3 and 4, not whether there was a partition; and it finds support in the nature of the transaction. The deed of July 19, 1937, was thought to be necessary to perfect the title of appellant's daughter and son-in-law to Lot 1, although they had two appropriations on which to rely as equities, namely, that made by their grandfather and one corresponding thereto, made by their father. Appellees' and appellant's proof shows that the agreement to which they testified was the price of a ratification for this deed, and "price" accords more with "contract to convey" than with "partition." It also accords with the form of the agreement as testified to by T. M. Hyde and K. W. Lee, and gives some significance to the provision of that agreement that mutual deeds would be executed by the Hyde children, conveying the various lots.

Appellees also filed cross-points of error to which we have not referred, complaining of the trial court's failure to submit certain issues to the jury. On our construction of the proof, and for other reasons, the trial court did not err in refusing to submit these issues. One of these issues inquired whether the father and three of the children (omitting E. G. Hyde) agreed upon a partition equivalent to that which the trial court found (there could not have been an effective partition without E. G. Hyde, one of the co-tenants); the other refused issue inquired whether the deed of July 19, 1937, conveyed Lot 1 to appellant as a part of his portion of the estate of T. E. Hyde and N. L. Hyde, and whether appellant was to be charged therefor. The only interest conveyed was that of appellees, inherited from their mother.

However, the cause must be remanded. The trial court has settled the rights of the parties in the 316' x 240'. strip on the basis of a partition agreement which the record did not support. This strip is the most valuable part of the 28 acre tract, and a proper division thereof is necessary to

**232**

protect and enforce the rights of all of the various interested parties. The trial court did not consider what effect was to be given appellant's appropriation of a part of the 316' x 240' strip, nor the value of appellant's improvements on the part he has appropriated, did not consider any adjustment of equities, etc. No effective and complete relief can be awarded in this court.

The entire cause is accordingly reversed and remanded to the trial court.